THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DAVID T. WILKEN, Defendant-Appellant.

Third District    No. 80-115

Opinion filed November 6, 1980.

Robert Agostinelli and Peter Carusona, both of State Appellate Defender's Office, of Ottawa, for appellant.

John D. Sloan, State's Attorney, of Aledo (John X. Breslin and Gerry R. Arnold, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

In this appeal by the defendant, David Wilken, from his conviction, following a jury trial, of burglary, the defendant raises only one issue: whether the State's failure to comply with discovery has prejudiced him to such an extent as to require a new trial. The facts relevant to this issue follow.

The defendant's trial counsel filed several pretrial motions, including a discovery motion. On November 13, 1978, the day the case was scheduled for trial, the defendant also filed a motion for a continuance and a motion to compel discovery, alleging that defense counsel had recently learned about the prior convictions of a State witness who had also been charged with the same burglary. Defense counsel obtained this information from the attorney who had represented a third co-defendant and alleged that this information should have been provided in discovery.

A hearing on these motions was held that day. In argument to the court, defense counsel elaborated by explaining that the attorney who represented Mark Smiley informed defense counsel that another witness, Boyd Mosley, who was also involved in the same offense, had two prior adjudications of burglary. Mosley had also undergone psychiatric and emotional testing and had failed a memory test, according to his source.

Defense counsel indicated that from what he could gather from the police reports, Smiley and Mosley were going to "point the finger" at the defendant. In this regard, it was important for the defendant to impeach the credibility of these witnesses. Consequently, defense counsel requested a continuance to check into these matters.

The prosecutor responded that he had failed to make available the

contents of Mosley's juvenile file. The prosecutor also indicated that he had no objection to defendant's placing the medical report on Mosley into evidence and stipulated that Mosley had prior convictions. The defendant's motion for a continuance was, therefore, denied.

Proceeding to trial before a jury, the State called Rex Armstrong as the first witness. Armstrong's testimony established that his Texaco gas station was burglarized on July 20, 1978, in the early morning hours. Armstrong indicated that he was called to the station by the police at 3 a.m. and observed that the station had been broken into and that several items, including tools, food, a chain saw and auto supplies, were missing.

Officer Kenneth Quinn testified that, while on patrol on the night in question, he noticed the west overhead garage door to the Texaco gas station was open. Quinn immediately shone his spotlight at the garage and called for assistance. While waiting for a backup, Quinn observed the defendant drive by the station.

At this point in Quinn's testimony, defense counsel objected, and a conference was held outside the jury's presence. Defense counsel indicated that Quinn's testimony of the defendant being at the scene was a complete surprise. The police reports which were tendered to defense counsel in discovery indicated that the only evidence against the defendant was the testimony of the two co-defendants. Defense counsel, asserting that it was incumbent upon the State's Attorney to make sure that the police officer's notes were turned over in discovery, asked for a mistrial.

In response to the defense counsel's complaint, the trial court referred to the prosecutor's opening statement wherein the prosecutor had specifically commented that the police officer had observed the defendant in the vicinity of the crime. Defense counsel, while conceding that he missed the prosecutor's statement, continued to argue that the prosecutor had, nevertheless, failed to provide a report. The prosecutor was of the opinion that Quinn had not written down the information that he had seen the defendant drive by the station, although he was aware that Quinn would testify about this matter. The prosecutor asked that a continuance be granted. Defense counsel reiterated his request for a mistrial, but the trial court denied this request and continued the trial to the following morning. While it was not discussed at the trial, a review of the record also establishes that the police officer testified to this effect at the preliminary hearing, although the defendant was there represented by counsel other than was representing him at the trial. Sometime before the next morning, defense counsel obtained a copy of Quinn's police report, and when the defendant's cause resumed, defense counsel renewed his motion for a mistrial. Defense counsel indicated that the information in the report would have changed his cross-examination of

Armstrong and could have prompted further investigation had the report been made available eariler. Defendant's motion for a mistrial was again denied.

Officer Quinn then resumed his testimony. He noted that the defendant drove by the gas station very slowly while Quinn was waiting for a backup. Defendant stopped his car at a stop sign for a minute and stuck his head out the window. Quinn thought there was another person in the car. While it was dark at that time, there was a street light at the intersection.

Quinn further testified that, at daylight that morning, he found a padlock and a red bandana at the corner of the gas station building. Several items, believed to have been taken from the station, were found in vacant lots in the area.

Mark Smiley was the next witness to testify. He indicated that on the night in question he was working on his car with Boyd Mosley one block south of the Texaco gas station. At approximately 10:30 p.m. he saw the defendant talk with Mosley. One-half hour later Smiley saw the defendant walk from the gas station carrying a rack of potato chips. The defendant told Smiley that he got the chips from the gas station because he had the "munchies." Later Smiley saw the defendant carry a chain saw from the station. The defendant put the saw in a green car which was not the defendant's car.

Smiley, realizing that the station was being burglarized, went to the station with Mosley. When they went inside, they observed the defendant.

Smiley indicated that he did not take anything and only went two feet inside the building. He was charged with burglary, but was acquitted.

Smiley also testified that the defendant was wearing shorts and a red bandana around his head. People's exhibit No. 12 was similar to the bandana the defendant was wearing, although Smiley admitted he did not tell the police that the defendant was wearing a bandana when he gave a description of the defendant to the police.

According to Smiley, he and Mosley were friends. Mosley was arrested first and Smiley thereafter.

Boyd Mosley also identified the defendant as being involved in the burglary, but he was not sure whether the defendant was wearing a red scarf. Mosley had been convicted of this same burglary. As part of his sentence, Mosley had to pay $1,365 in restitution, and he understood that he would have to pay less money if the defendant was also convicted. Mosley admitted having two convictions as a juvenile for burglary and indicated that Smiley carried items out of the garage.

When the police originally contacted him, Mosley denied commit-

ting the burglary. Eventually, however, he did admit his involvement, and turned over some of the proceeds.

After Mosley's testimony, the State rested. Officer Quinn testified first for the defendant. He indicated that no proceeds were found in the defendant's car or at the defendant's residence.

Ray McVey, Donald Wilken, and the defendant then testified and presented an alibi defense. McVey indicated that on the night in question he was with the defendant at a tavern until 10 p.m. McVey then drove the defendant to Donald Wilken's house and borrowed the defendant's car until 3:30 in the morning. McVey drove by the Texaco station during his travels. When he returned to Donald's house, the defendant was sleeping. Donald, defendant, Terry Scham and McVey all resided at Donald's house.

Donald Wilken, the defendant's brother, indicated that the defendant arrived home at 10:20 p.m. and went to sleep. The defendant had been drinking and was drunk. Donald indicated that the defendant did not leave home later that night.

Defendant also testified that he was drinking at a tavern and then went home on the night in question. The defendant had had quite a bit to drink, and he denied any involvement in the burglary. The defendant stated that he wore a red scarf on occasion, but denied that the one found at the garage belonged to him.

Following the defendant's testimony, Smiley was called as a rebuttal witness. He testified that when he saw the defendant place a chain saw in a car, there were two people in the car. Smiley identified them as McVey and Thompson. Initially, Smiley told the police that he could not identify the two persons in the car because McVey told Smiley that he had better keep his mouth shut. The defendant was with McVey when McVey made this threat.

After the jury returned a guilty verdict, the defendant filed a post-trial motion alleging that his request for a mistrial had been improperly denied. Following a hearing, the defendant's motion was denied.

■■ Certainly, a violation of due process occurs whenever a prosecutor, regardless of motive, suppresses evidence which is material to the guilt or innocence of the accused after the defendant has made a request for the production of that evidence. (*People v. Nichols* (1976), 63 Ill. 2d 443, 349 N.E.2d 40.) The determination of the proper remedy to invoke where the State has failed to disclose evidence during discovery is within the discretion of the trial court, and a reviewing court will not reverse the trial court's exercise of discretion in the absence of a demonstration of prejudice or surprise. (*People v. Wilson* (1978), 61 Ill. App. 3d 401, 377 N.E.2d 1284.) Prejudice can not be demonstrated merely by speculation

or conjecture, such as by a claim that the theory of defense might have been different had the evidence been made available to the defendant prior to trial. *People v. Hambrick* (1979), 68 Ill. App. 3d 447, 386 N.E.2d 455.

■■■ While it is true that the defense counsel became aware of Mosley's prior convictions and psychiatric testing only a short time before trial, the defense counsel was able to use the witness' prior convictions in an attempt at impeachment. As to the psychiatric report, we agree with the State that it falls within neither Supreme Court Rule 412(a) (Ill. Rev. Stat. 1979, ch. 110A, par. 412(a)), which requires the disclosure of the names and addresses of witnesses, any material regarding a statement by the witnesses, any material regarding or names of witnesses to the statements of the accused or a co-defendant, transcripts of the portions of the grand jury minutes concerning the testimony of the accused or witnesses to be called by the prosecution, reports or statements of experts made in connection with the case, any tangible objects obtained from the accused which the prosecutor intends to use as evidence, and any record of prior convictions of State witnesses, nor Supreme Court Rule 412(c) (Ill. Rev. Stat. 1979, ch. 110A, par. 412(c)), which requires the disclosure of any material within the State's possession which tends to negate the guilt of the accused.

■■ As for the report of Officer Quinn, any error which may have resulted from the failure of the State to provide Quinn's report as part of discovery can not be considered harmless beyond a reasonable doubt. There is no question but that the report should have been disclosed. Officer Quinn was the only non-codefendant witness to place the defendant at the scene of the crime, and the jury, in disregarding the defendant's alibi defense, could have placed great weight on Officer Quinn's testimony. As a result, the defendant was prejudiced in that he was hindered in the preparation of his defense by the prosecution.

For the foregoing reasons, the judgment of the Circuit Court of Mercer County is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

ALLOY, P. J., and STENGEL, J., concur.