THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RONALD JONES, Defendant-Appellant.

First District (5th Division)   No. 1—87—3268

Opinion filed September 6, 1991.—Rehearing denied October 11, 1991.

Michael J. Pelletier and Pamela L. O'Shea, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Ado L. Rugai, Special Assistant State's Attorney, and Renee Goldfarb and James E. Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GORDON delivered the opinion of the court:

A jury found defendant Ronald Jones guilty of armed robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—2(a)) and aggravated unlawful restraint (Ill. Rev. Stat. 1985, ch. 38, par. 10—3.1). The court sentenced the 16-year-old defendant as an adult, to a term of 7½ years' imprisonment. On appeal, defendant contends that the trial court improperly admitted hearsay identification testimony by two police officers; that the trial

court improperly admitted the victim's testimony about a prior lineup; that defendant was denied his right to a fair trial when the State failed to disclose information regarding a police officer's identification of defendant prior to trial; that the court abused its discretion in sentencing defendant by considering irrelevant information contained in the victim impact statement; and that he was denied due process of law and ineffective assistance of counsel when the trial court failed to advise him of his right to be sentenced as a juvenile under the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 702—7(6)(c)).

Vivian Wallace testified that on July 5, 1986, at 8:30 p.m., she was entering her car on the passenger's side when a man came up to the car with a gun drawn. He told her to open the door or he would blow her brains out. He entered the car on the driver's side, and a second man, later identified as defendant, entered the back of the car. He also held a gun in his hand. She was able to see the faces of both men.

The driver pointed his gun at Wallace's temple, and defendant put his gun to the back of Wallace's head. Defendant demanded her purse. Wallace turned around to hand it to defendant, and again saw his face. The driver ordered Wallace to turn around while defendant rummaged through the purse. The driver then started the car and drove for several minutes, finally stopping in an alley. Defendant, with his gun still pointed at Wallace's head, then demanded Wallace's gold earrings, rings and necklace. The driver had his arm around Wallace's shoulder and had his gun pointed in her face. Defendant then got out of the back seat and sat in front, next to Wallace, where she again observed his face. The two men told Wallace to get out of the car, and not to turn around or she would be shot. Defendant and the driver drove away in the car. Wallace telephoned the police.

Wallace testified further that she viewed more than one lineup. She made no identification in the first lineup, and identified defendant in the second lineup on July 18, 1986.

Officer Anthony Maslanka testified for the State that on July 5, 1986, he investigated the armed robbery and discovered defendant's name after speaking with Colvin.[1] A lineup was held on July 18, 1986, and the victim identified defendant.

Officer Paul Phillips testified that on July 7, 1986, at 9:30 p.m., he was on patrol when he observed two men stripping the victim's car. His partner apprehended Fredrick Colvin. Phillips chased the other man,

---

[1]In its opening statement and the initial questioning at trial, the State erroneously referred to Fredrick "Coleman," where the record clearly reflects his name was Fredrick "Colvin."

whom he observed face to face for a second or two. Phillips was not able to catch the other man. Phillips was asked if he saw the other man in court.

The defense objected on the basis that it had received no discovery response or other notice that Phillips was an identification witness. The State responded: "It's in the police reports." The court overruled the objection. Defense counsel argued further: "There is nothing in the police report about him identifying anybody. I just want to make that clear." The court replied, "Well, you made it clear. There's been a response." (The record shows that defendant submitted a detailed request for witnesses; occurrence witnesses; and identification witnesses. The State's reply merely stated generally that the "State may call as witnesses any persons named in police reports" and other documents not relevant here.)

Phillips then pointed to defendant and stated: "I believe that's the young man." Phillips acknowledged that the police report did not state that he could identity the person he chased. He later told his superiors he could identify the man, but did not know if they included that fact in any follow-up reports.

Phillips also testified that the police received information about the second person from Colvin. He included in a report that the person's first name was "Ronald" and last name was "Smith, Williams or Jones."

Defendant first contends that it was improper to admit the hearsay testimony of Officers Phillips and Maslanka regarding Colvin's identification of defendant as the man who ran away when Colvin was caught stripping the victim's car.

Testimony regarding the prior identification of defendant as the perpetrator by a third person is hearsay since it is an out-of-court statement introduced to prove the truth of the matter asserted. (*People v. Rogers* (1980), 81 Ill. 2d 571, 411 N.E.2d 223; *People v. Canale* (1972), 52 Ill. 2d 107, 285 N.E.2d 133.) It would be inadmissible hearsay if "a third person were to testify that he saw or heard A identify B as the person who committed the offense," unless that person was subject to cross-examination. *People v. Rogers*, 81 Ill. 2d at 579. See also Ill. Rev. Stat. 1989, ch. 38, par. 115—12; *People v. Page* (1987), 163 Ill. App. 3d 959, 516 N.E.2d 1371 (both person making prior identification and person testifying to prior identification must be available for cross-examination). See generally M. Graham, Cleary & Graham's Handbook of Illinois Evidence §611.16, at 435 (5th ed. 1990).

Maslanka testified that he spoke with Colvin and learned defendant's name.

"[PROSECUTOR]: Pursuant to that investigation [of the armed robbery] did you gain a lead on any suspects?

A. Yes, I did.

Q. Who was that?

A. A suspect by the name of Ronald.

Q. And, did you subsequently in your investigation find out that person's last name?

A. Yes, I did.

Q. What is his last name?

A. Ronald Jones.

Q. Now, how did you determine the suspects [sic] last name?

[DEFENSE COUNSEL]: Objection. Calls for hearsay answer I believe.

THE COURT: He may answer. Rephrase the question.

[PROSECUTOR]: Yes, Judge.

Q. Who did you speak to regarding this Ronald?

A. Subject by the name of Fredrick [Colvin].

Q. And, what were the circumstances surrounding your conversation with Fredrick [Colvin]?

A. Fredrick had been arrested for stripping Mrs. Wallace's car that was taken in the robbery."

The State raised the question again in its examination of Phillips:

"[PROSECUTOR]: Did you learn any other information regarding the identification of the person that ran from the car?

A. I did from—

[DEFENSE COUNSEL]: Objection.

\* \* \*

THE COURT: Well, overruled.

[PROSECUTOR]: Officer, did you learn any information as to the identify of the person that ran away from the car on this date?

A. We received a little information from the guy we arrested.

Q. Okay. And that was who?

A. Frederick Colvin."

■ Thus, Maslanka and Phillips offered testimony which was tantamount to stating that Colvin identified defendant as the person who committed the offense. Although, because of the interposed objections, they did not specifically articulate that Colvin reported defendant's name to them, nevertheless the total import of the testimony makes it clear that the police learned defendant's name from Colvin.

The opening statement and closing argument made by the State further highlighted and further exacerbated the impropriety of the testimony.

In its opening statement, the State told the jury:

"[Y]ou will hear from police officers. And, those officers will tell you about their investigation. And, how they determined through information that they found that the car that the victim was driving and they found person stripping that car [sic]. And, that one of the persons stripping that car was apprehended, a Fredrick [Colvin]. And, you will hear the police officer tell you when Fredrick [Colvin] was brought in for stripping the victim's car that at that time—excuse me, he gave him the name of the other person who was driving the car. And, that person the officer will tell you the name they got was Ronald Jones."

In closing arguments, the State again used the officers' testimony in question as substantive evidence:

"[PROSECUTOR]: Yet police officers who told you about their investigation and in this case they didn't have to rely, fortunately for them, fortunately for us, fortunately for Vivian Wallace, they didn't have to rely on a description given by a woman who had just been robbed at gun point.

\* \* \*

Now, as to this defendant and his being arrested after the officer spoke to Mr. Colvin, no, the State did not bring in Frederick Colvin. You heard from the stand that Frederick Colvin was arrested in the matter for stripping the car.

[DEFENSE COUNSEL]: Objection.

THE COURT: Overruled.

[PROSECUTOR]: And we did not bring him in. He wasn't an eye witness to the armed robbery of Vivian Wallace. May have been an eye witness to the stripping of the car, but that is not the case you have before you today. What the stripping of the car involving Mr. Colvin and this defendant goes to is to show that he was connected with the car. To show that the police got a lead. A few days after this happened the victim's car is being stripped. They caught him, one guy. After they caught him they learn information about another guy and they follow up the lead."

These remarks, in conjunction with the officers' testimony, rendered it impossible for the jury to avoid the conclusion that Colvin's out-of-court declaration identifying defendant as his accomplice in stripping the car was offered as substantive proof of that fact. This was prejudi-

cial to defendant because Colvin did not testify and therefore was not subject to cross-examination.

The State argues that the statements of Maslanka and Phillips were admissible "not to prove the truth of their contents but to show the investigatory procedures that were entirely within the knowledge of the officer[s]." The above-quoted comments from the prosecution's opening statement and closing argument clearly show, however, that Colvin's hearsay identification was explicitly offered as substantive evidence.

The State argues as an alternative that, even if it improperly used the hearsay statements as substantive evidence, the verdict should not be disturbed absent a showing of substantial prejudice to defendant. (*People v. Baptist* (1979), 76 Ill. 2d 19, 389 N.E.2d 1200.) We find, however, that it was substantially prejudicial to have two police officers testify that they were informed of defendant's identity by defendant's accomplice during the stripping of the victim's car. The State's identification evidence consisted of Wallace, who saw defendant very briefly under traumatic circumstances; and Phillips, who identified defendant as the man stripping the car, when that identification has been challenged where Phillips failed to include it in a police report and where Phillips did not offer himself as an identification witness until after the police spoke with Colvin. Under these circumstances, the State's evidence was not so overwhelming as to avoid the prejudicial impact resulting from the State's elicitation of inadmissible hearsay identification from the alleged accomplice. See *People v. Burns* (1988), 171 Ill. App. 3d 178, 524 N.E.2d 1164 (reversible error to admit officer's testimony that nontestifying codefendant identified defendant as his accomplice); *People v. Johnson* (1979), 68 Ill. App. 3d 836, 386 N.E.2d 642.

Defendant next contends it was error to permit the victim to testify that prior to identifying defendant in a lineup she had viewed another lineup (which included Colvin but not defendant) and did not identify anyone. Officer Maslanka testified that the victim viewed more than one lineup. The victim testified similarly:

"[PROSECUTOR]: And, did you view more than one lineup?

A. Yes.

Q. Can you tell us approximately when the first lineup was that you viewed?

A. The first lineup was maybe a few days after the incident.

Q. And at the time you viewed the first lineup were you able to make an identification of either [of] the persons that you saw?

[DEFENSE COUNSEL]: Objection.

THE COURT: She may answer.

[DEFENSE COUNSEL]: Side bar, please.

THE COURT: All right."

In the side bar, the court found the prior lineup was relevant "[o]nly for the purpose of allowing it, not going into it" with names or other details. The victim then testified: "I was not able to identify anyone at that time."

On redirect examination, Wallace testified similarly:

"[PROSECUTOR]: Miss Wallace you saw more than one lineup, is that right?

A. Yes, I did.

Q. And—

[DEFENSE COUNSEL]: Objection.

THE COURT: She can answer the question.

[PROSECUTOR]: Counsel asked you whether or not in a lineup in which you saw this defendant you expected to see the offender, is that what she asked you earlier?

A. Yes, she did.

Q. But you had seen a lineup prior to that, is that right?

A. Yes.

[DEFENSE COUNSEL]: Objection.

THE COURT: Sustained.

[PROSECUTOR]: May I approach the bench, please? Side bar."

During the side bar, the court stated: "We have touched that one point before and I am going to let it lie like it is. I'll sustain the objection and so let's go on to another question."

■ Evidence that a witness previously failed to identify someone other than the defendant is not relevant or admissible. (*People v. McGee* (1987), 160 Ill. App. 3d 807, 513 N.E.2d 885; *People v. Trass* (1985), 136 Ill. App. 3d 455, 483 N.E.2d 567.) This is because the failure to identify another person in one lineup does not make it more likely that she correctly identified defendant in the subsequent lineup. (*People v. Trass* (1985), 136 Ill. App. 3d 455, 483 N.E.2d 567.) Here, the State's case turned on the testimony of the single eyewitness to the armed robbery. The State improperly used Wallace's failure to identify anyone in a lineup including Colvin, but not defendant, as evidence to bolster her subsequent identification of defendant.

The impropriety of the evidence was further highlighted by the State's closing argument focusing on the failure to identify anyone in the first lineup:

"[PROSECUTOR]: Now, we have a line-up on the 8th and defense counsel suggested that when Miss Wallace went to the police department to look at a line-up—You knew that they were

going to have someone there for you \*\*\*. Well, you heard from Miss Wallace that there was a line-up on the 8th and she didn't identify—

[DEFENSE COUNSEL]: Objection.

THE COURT: Jury has heard the testimony and the evidence.

[PROSECUTOR]: That was the testimony. If she was so hell bent to point a finger which is what, somehow, I think they are trying to show, for the simple reason, when she saw the line-up on the 8th, that wasn't the person that did it."

In its rebuttal argument, the State argued the point further:

"[PROSECUTOR]: After they caught [Colvin] they learn information about another guy and they follow up the lead. They hold one line-up. She said she saw one line-up a few days after.

[DEFENSE COUNSEL]: Objection, Judge.

THE COURT: Overruled.

\* \* \*

[PROSECUTOR]: If Miss Wallace had wanted so badly to catch these guys which we are sure she does, but, if she wanted so badly that, she would have pointed out anybody at all.

\* \* \*

Now, if she was just identifying Willie Nillie, she had a couple of opportunities to identify not one, but two people, but, she didn't. Counsel would have you think she would put any other black young man up there and she'd identify him. Obviously, to Miss Wallace all black, young, men don't look alike, and she wasn't going to pick just anybody. She picked the person who did it."

We are not persuaded by the State's argument that Wallace's non-identification during the first lineup was relevant to rebut an inference made by defense counsel while cross-examining Wallace, that Wallace expected to see an offender when she saw the second lineup containing defendant. With respect to Maslanka, the State elicited the testimony from Maslanka *before* Wallace was even cross-examined by defense counsel.

In addition, with respect to both Maslanka and Phillips, the State's argument is inconsistent with what the State itself considered to be the function of this evidence, as indicated in its opening statement. The prosecutor told the jury during the opening statement:

"[PROSECUTOR]: In fact you will hear the police officer, several lineups including the one with Frederick [Colvin], and the

victim viewed those lineups. She didn't identify Fredrick [Colvin] until [*sic*] initial lineup.

[DEFENSE COUNSEL]: Objection.

THE COURT: Overruled."

We conclude that this error would have alone sufficed to require reversal under the circumstances of this case, where Wallace was the only eyewitness to the armed robbery itself, and where Phillips' identification testimony of defendant during the stripping of the car was seriously challenged. See *People v. Smith* (1985), 139 Ill. App. 3d 21, 486 N.E.2d 1347 (error requires reversal where erroneously admitted statement was used to bolster credibility of crucial witness' testimony).

Defendant next contends that he was denied a fair trial where the State failed to disclose in pretrial discovery information regarding Officer Phillips' identification of defendant.

At trial, Phillips testified that the man who ran away from the car being stripped was defendant. "I believe that's the young man." Defendant's objection based on the State's failure to provide this information in discovery was overruled. On cross-examination, defense counsel brought out that Phillips' report did not state that he could identify defendant as the person who ran away from that car. Defense counsel asked, "So, this is the first time anyone has heard, when the case comes to trial, that you could identify that person who ran away from the car, is that right?" Phillips replied, "Right." Phillips also testified that he had told his superiors he could identify the second person found stripping the car. He did not know if his superiors included that fact in a report. He never viewed a lineup in connection with this case.

Defendant's motion for discovery requested:

"2. A List of Witnesses of persons [*sic*] whom the prosecution may or may not call as witnesses and their addresses, including production of the following: a) Any written or recorded statements by these witnesses, including those written or recorded statements of police officers; b) Any memoranda reporting or summarizing oral statements by such witnesses.

3. A List of Witnesses that the State may or may not call who were occurrence witnesses at the scene of the alleged offense or who were present at the time of the arrest of the defendant, together with their last known addresses and telephone numbers.

\* \* \*

13. \*\*\* [T]he names and addresses of the witnesses they intend to call at the time of trial for identification of the defendant as the perpetrator of the crime:

a) Time, date and place of identification;

b) If photographic identification was used, production of any photo used, whether of defendant or of other persons;

c) All persons present at such viewing;

d) Any pictures taken of line-up, etc.;

e) Names and addresses of any individuals who confronted accused and made no identification or identified him for other crimes."

The State's answer to discovery did not respond to the defendant's request by each item number, and instead offered only a general reply:

"1. State may call as witnesses any persons named in police reports, transcripts, medical reports and other documents attached to and incorporated as part of this answer.

* * *

3. Statement of persons State may call as witnesses; statements made by defendant or co-defendant and list of witnesses to the making; date, time and place of occurrence, process used to seize evidence and identification procedure are in above said documents."

■ If the police reports did not mention Phillips' name at all, there would be a clear violation of the discovery rule. (See 134 Ill. 2d R. 412.) Defendant apparently concedes, however, that Phillips' name appears somewhere in a police report. Defendant correctly maintains that the "mere listing of Phillips' name" on a police report, with no specification on either the report or the State's answer to discovery that Phillips was an *identification* witness, constituted a failure to disclose crucial information requested by defendant's discovery motion. Supreme Court Rule 412 makes the State's compliance with defendant's discovery request mandatory. 134 Ill. 2d R. 412; *People v. Burns* (1979), 75 Ill. 2d 282, 388 N.E.2d 394.

In *People v. Wilken* (1980), 89 Ill. App. 3d 1124, 412 N.E.2d 1071, police officer Quinn testified that while on patrol he observed defendant at the scene of the burglary. Defense counsel objected on the basis that the identification testimony of the officer was a complete surprise because the police reports indicated the only evidence against defendant was the identification testimony of the two codefendants. Defendant had not been provided with Quinn's report. However, Quinn testified similarly at a preliminary hearing where defendant was represented by different counsel. Defense counsel argued at trial that he would have altered his cross-examination of the State's witnesses, and that knowledge that Quinn would identify defendant would have prompted further investigation.

The court in *Wilken* found the failure to provide the information about the officer's ability to identify defendant reversible error, as it could not be considered harmless beyond a reasonable doubt. "There is no question but that the report should have been disclosed. Officer Quinn was the only non-codefendant witness to place the defendant at the scene of the crime, and the jury *** could have placed great weight on [his] testimony." *People v. Wilken*, 89 Ill. App. 3d at 1129, 412 N.E.2d at 1071. See also *People v. Orr* (1986), 149 Ill. App. 3d 348, 500 N.E.2d 665 (tendering police report insufficient where defendant's statement to third person not disclosed in that report); *People v. Miles* (1980), 82 Ill. App. 3d 922, 403 N.E.2d 587 (prejudicial error where police officer's testimony radically different from any information contained in his police report).

In the present case, the error was even more egregious than in *Wilken* in light of the State's repeated references to Phillips' identification during the trial and the closing argument.

The identification of defendant by a police officer played a key role in the trial, and thus the State's failure to disclose Phillips as an identification witness constituted prejudicial surprise and deprived defendant of his right to a fair trial. See generally *United States v. Bagley* (1985), 473 U.S. 667, 87 L. Ed. 2d 481, 105 S. Ct. 3375.

In view of our holding, we need not address the sentencing issues raised by defendant.

For the foregoing reasons, individually and cumulatively, the judgment of the circuit court of Cook County is reversed and the cause is remanded for a new trial.

Reversed and remanded.

MURRAY and McNULTY, JJ., concur.