THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LEANDRO RODRIGUEZ, Defendant-Appellant.

First District (1st Division)   No. 1—88—2331

Opinion filed October 5, 1992.

434

Randolph N. Stone, Public Defender, of Chicago (Stephen L. Richards, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Michael Latz, and Gregory Vaci, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MANNING delivered the opinion of the court:

Following a jury trial, defendant Leandro Rodriguez was convicted of murder and attempted murder. He was sentenced to concurrent terms of 40 years and 30 years, respectively, in the Illinois Department of Corrections.

On appeal, defendant questions:

(1) whether a statement made by him at a prior court proceeding in which he admitted his gang membership was improperly admitted at trial because the prosecutor failed to disclose that statement to the defense during discovery;

(2) whether the trial court erred in excluding the statement of an unidentified police officer allegedly made at a pretrial lineup identification;

(3) whether certain comments made by the prosecution during rebuttal closing argument to the jury deprived him of a fair trial, to wit:

(a) that defendant's exculpatory eyewitness had been intimidated by defendant's "gang-banging brothers";

(b) that the same witness was also a gang member;

(c) that the State chose not to call this witness because he was not "reliable";

(d) that if the jury "feel(s)" either of the State's witnesses were telling the truth, that is proof beyond a reasonable doubt;

(e) that defendant put on an "unrecognized defense of confusion"; and

(f) that defendant had an obligation to call a non-alibi witness;

(4) whether his sentence should be reduced or remanded to the trial court for resentencing where:

(a) the trial judge in sentencing defendant to the maximum sentence for murder, considered as the aggravating factor that the victim's death was "the ultimate serious harm"; and

(b) the trial court allowed the prosecutor's unsworn representation concerning a prior conviction in a juvenile adjudication at the sentencing hearing; and, finally,

(5) whether the trial court abused its discretion in sentencing him to the maximum terms for murder and attempted murder.

For the reasons that follow, we affirm. The following trial testimony is relevant to our discussion. The charges against the defendant arose out of the April 4, 1986, early morning fatal shooting of Daniel

Klish (Klish) and the shooting injury to Kenneth James Thiel (Thiel) which occurred on Springfield Street in Chicago in front of a 12-unit, three-story apartment building. Gina Dobose (Gina), an acquaintance of Klish, testified for the prosecution. She stated that after returning from the racetrack with her boyfriend she went to a party given by Niva DeMartino, a resident who lived on the third floor of the apartment building. She saw both Klish and Thiel, who were former members of the "Gay Lords" street gang, at the party. At about 3 a.m., Gina and Thiel left the party, and as they walked toward their cars, two men approached them and one of the men, whom she later identified as the defendant, said "Help, we are Gay Lords. We need help."

Gina further testified that following a conversation between defendant and Thiel, defendant stated, "I am a [Simon City] Royal and a Gay Lord killer. I am going to kill you. I am going to blow your heads off." As defendant and Thiel struggled, Gina heard Niva yell from her apartment, "Danny [Klish] help him. He has got a gun." The gun went off and Thiel, who suffered a gunshot wound to the left cheek, fell to the ground.

When Klish ran out of the building, defendant pursued him and chased him between two cars, at which time defendant shot Klish in the stomach. After defendant fled the scene, the police and ambulance arrived. Klish died five hours later. While at the hospital, Gina spoke with detectives and described the shooter as having slicked back, black hair, clear skin and brown eyes and he wore a black leather jacket, jeans and a white shirt. He was slightly shorter than Gina, who was about 5 feet 8 inches tall, and spoke English clearly but with a slight accent. Gina identified defendant from a police photo book on April 5 and from a lineup consisting of five men on April 11.

Thiel's testimony regarding the shootings substantially corroborated that of Gina. While at the hospital he told detectives that the shooter was a male Hispanic about 21 years old, 5 feet 8 inches, with black, pulled-back hair. He also identified defendant as the assailant in a lineup and in open court and also, like Gina, Thiel was unable to identify anyone from the police photo books on April 4, 1986, but chose defendant from the photo books the following day, April 5.

Several police officers testified for the prosecution about their investigation of the incident and the witnesses' identification of defendant. Detective Sanders conducted a lineup in which Gina, Thiel and Paul Mandrik, a resident who lived on the first floor of the apartment building, each viewed the lineup separately. Both Gina and Thiel identified defendant as the shooter, while Paul Mandrik made no identification. Following expert testimony by a forensic pathologist that the

cause of Klish's death was a gunshot wound to the abdomen, the State rested its case in chief.

Defendant called Paul Mandrik to testify. Mandrik stated that on April 4, 1986, at around 3 a.m., he heard loud noises and people running down the hallways at his building. When he looked out the window he saw two people running across the street; one person ran between a parked car and slipped on the gravel, while the person in pursuit approached the first person, pointed a gun at him and shot him twice as he lay on the ground. He then observed the victim as he got up holding his stomach and walked across the street where he leaned against a car.

On April 6, 1986, Mandrik described the events to the police, and although he looked through police photo books and later viewed a lineup, he was unable to make an identification of the shooter. Mandrik further testified that the man with the gun had shoulder-length blond hair.

Defendant's brother, Leonard Rodriguez, testified that defendant was with him on the night in question at Wee Willie's bar until about 2:15 a.m. Upon leaving Wee Willie's, they went to another bar in the area but found it closed. Thereafter, they walked approximately two miles to their mother's house and arrived there close to 3 a.m. Defendant then testified in his own behalf to substantially the same events as Leonard. He denied being at the location of the shooting and shooting anyone there. On cross-examination, defendant admitted once being a member of the Simon City Royals, but stated that he was not currently a member. When asked if he remembered telling the assistant State's Attorney that he was a member of a gang on June 1, 1986, defendant responded that he did so recall.

Mrs. Rodriguez, defendant's mother, also testified as an alibi witness in his behalf. She stated that she saw and spoke to defendant on the night in question. When defendant and his brother Leonard arrived at her home at about 2:30 a.m. their younger brother let them into the house and they remained there.

The State presented John Gallagher and Mark Sanders as rebuttal witnesses. Gallagher testified that he went to the Rodriguez home on April 5, 1988, to interview Leonard. Leonard told him that on April 4 his mother let him and defendant into the house and that his father did not live there then. Sanders stated that on April 5, 1987, while investigating the incident, he spoke with Mandrik, who described the offender as a male Hispanic with short dark hair brushed back.

Following closing arguments, the jury returned with verdicts of guilty of the murder of Klish and guilty of the attempted murder of

Thiel. After the sentencing hearing, at which the State presented evidence of aggravating factors, the trial judge sentenced defendant to terms of 40 years' and 30 years' imprisonment to be served concurrently.

Defendant first contends that the trial court erred when it allowed the State to cross-examine defendant about a prior statement made to an assistant State's Attorney on June 1, 1986, in another criminal proceeding that defendant was a member of the Simon City Royals as of that date. The trial judge overruled defense counsel's objection although the statement was not disclosed by the State in its answer to discovery and the State had only informed defense counsel that he intended to use the statement as impeachment in the middle of the defense case, just before counsel called the defendant as his final witness.

Defendant asserts that the error deprived him of a fair trial where the statement that he was a member of a gang had a clear bearing on his guilt or innocence because the shooter declared himself as a "Royal," the motive for the crime was gang related and defendant's membership in the gang would make it more likely that he was the killer. He urges that the discovery violation mandates reversal under *People v. Weaver* (1982), 92 Ill. 2d 545, 560, 442 N.E.2d 255, since this was a close case.

It is well settled that failure of the prosecution to disclose a prior statement made by defendant renders that statement inadmissible at trial (*Weaver*, 92 Ill. 2d 545, 442 N.E.2d 255), even if the statement is used only to rebut defendant's testimony. (*People v. Bailey* (1982), 103 Ill. App. 3d 503, 431 N.E.2d 723.) However, in *People v. Davis* (1982), 106 Ill. App. 3d 260, 435 N.E.2d 838, this court found that where defendant and his counsel had knowledge of the transcript of the pretrial hearing, defendant's claim that the statement therein should not be admitted, because it was not tendered to defendant, was without merit.

■■ In the case at bar, the trial court allowed the use of the statement to impeach defendant since defendant made the prior statement at a former court proceeding under oath and, like *People v. Davis*, both defendant here and his defense counsel were aware of the existence of the prior statement. The trial court's decision should not be overturned on review absent a clear showing of abuse of discretion. (*People v. Wilken* (1980), 89 Ill. App. 3d 1124, 412 N.E.2d 1071.) Assuming error by the trial court in allowing the statement, we find that any error was harmless in light of the eyewitness testimony

against defendant. We do not perceive the evidence of defendant's guilt to be closely balanced.

Defendant next asserts that the trial court committed several evidentiary errors when it sustained the prosecutor's objections and repeatedly denied defense counsel an opportunity to question witness Paul Mandrik about his conversations with and the conduct of the police officers during the identification procedures. Specifically, he assigns error to the trial court's exclusion of Mandrik's testimony that a police officer present at a pretrial lineup told him to "just pick out somebody," and that such error denied his constitutional right to present evidence in his own defense. (See *Washington v. Texas* (1967), 388 U.S. 14, 18 L. Ed. 2d 1019, 87 S. Ct. 1920.) He urges that evidence about defects in identification procedures (*People v. Carter* (1979), 73 Ill. App. 3d 406, 409, 392 N.E.2d 188), *i.e.*, the police statements to Mandrik, was relevant to establish that the police used unfairly suggestive identification procedures with respect to all of the witnesses to the shooting; therefore, the identifications by Gina and Thiel were unreliable.

Questions concerning characterization and presentation of evidence are within the sound discretion of the trial court, and its exercise of discretion will not be disturbed on review absent an abuse of discretion resulting in prejudice to the defendant. (*People v. Columbo* (1983), 118 Ill. App. 3d 882, 455 N.E.2d 733.) Where the record indicates a sufficient basis for a trial court's ruling on evidentiary matters, the decision will not be disturbed where there is no abuse of discretion. *People v. Rogers* (1985), 135 Ill. App. 3d 608, 482 N.E.2d 639.

■ In the case at bar, the record supports the trial court's decision to exclude Paul Mandrik's proffered testimony, which constituted unreliable hearsay and improper impeachment. Assuming, *arguendo*, exclusion of this testimony constituted error, it was harmless error in light of the identification testimony of the two eyewitnesses. Moreover, there was never an allegation that the lineups conducted for Gina and Thiel were suggestive and unfair. In *People v. Camel* (1974), 59 Ill. 2d 422, 322 N.E.2d 36, the Illinois Supreme Court held that, where under the totality of circumstances there was no substantial likelihood of misidentification, refusal of an offer of proof which might have been supportive of the contention that identification at preliminary hearing was conducted under suggestive circumstances was not reversible error. Accordingly, we find no reversible error here.

Defendant next maintains that the trial court's failure to sustain defense counsel's objection to the prosecutor's statements made during rebuttal closing argument that defendant's "gang-banging" broth-

ers intimidated witness Paul Mandrik without any evidence to support such an accusation mandates reversal. He contends that the prosecutor's questions to defense witnesses concerning gang affiliation and the remarks in closing argument involving gang criminality toward witnesses were so prejudicial as to require reversal. *People v. Rivera* (1986), 145 Ill. App. 3d 609, 622, 495 N.E.2d 1088.

The State initially responds that defendant has waived review of the prosecutor's remarks since he failed to specifically raise them in his motion for a new trial thereby precluding the trial judge from reconsideration of his rulings concerning these comments. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) They rely upon *People v. Thomas* (1983), 116 Ill. App. 3d 216, 220, 452 N.E.2d 77, wherein this court determined that defendant's post-trial motion, which stated the prosecutor's closing argument contained "prejudicial, inflammatory, and erroneous statements designed to arouse the passions and prejudices of the jury," did not preserve the issue for review because of the lack of specificity. The State contends alternatively that each of the complained-of comments was proper argument supported by the evidence and therefore well within the latitude afforded to the prosecution in closing argument.

■ While we find the defendant has waived review of the prosecutor's remarks by failing to specifically raise them in the post-trial motion, assuming, *arguendo*, we were to review the issue, we believe the comments about gang involvement were proper since a prosecutor may comment on the evidence and all legitimate inferences deducible from the evidence, even if those inferences are unfavorable to defendant. (*People v. Harris* (1989), 187 Ill. App. 3d 832, 543 N.E.2d 859.) Further, although defense witness Leonard Rodriguez denied any involvement in or knowledge of gangs in general, he went on to testify in detail about the location of gang territory. Moreover, the trial court's action in sustaining an objection and instructing the jury to disregard improper statements is a sufficient cure for any prejudice resulting from improper argument. *People v. Baptist* (1979), 76 Ill. 2d 19, 30, 389 N.E.2d 1200.

Defendant also assigns as errors the prosecutor's interrogatory statement, "How do you think he (Paul Mandrik) knows the Gaylords are over there?" and remarks that the prosecutor had not called Mandrik as a witness because "[w]e can't. He is not reliable. That is why he is not a People's witness in this case." Defendant maintains that the statements were "so substantially prejudicial that the taint of their prejudicial effect to him could not have been cured by the trial court's sustaining of the defense objections." (*People v. Brown* (1983),

113 Ill. App. 3d 625, 629, 447 N.E.2d 1011.) Additionally, it was error for the prosecutor to express his personal opinion of a witness' (here Paul Mandrik's) veracity. *People v. Martin* (1975), 29 Ill. App. 3d 825, 829-30, 331 N.E.2d 311.

■ We have reviewed the record and find that the complained-of statements were made after defense counsel's remarks about witness Mandrik. In the instant case, defense counsel accused the prosecution of hiding Paul Mandrik by insinuating that his testimony contradicted that of Gina and Thiel. It is well settled that the credibility of witnesses is a proper subject for closing argument if it is based on facts in the record or on inferences drawn from facts. Further, where a prosecutor's remarks are in response to and invited by defense counsel's argument, a defendant cannot claim error as a result of the prosecutor's response. (*People v. Johnson* (1986), 114 Ill. 2d 170, 499 N.E.2d 1355.) Moreover, any error that occurred here was cured by the trial judge's sustaining of defendant's objections.

During summation, the prosecutor told the jury "And if you feel that the People's witnesses are telling the truth, either of them, Gina or Kenny (Klish)—*** Then that is proof beyond a reasonable doubt and you could and should find them [*sic*] guilty of the murder of Danny Klish and the attempt [*sic*] murder of Kenneth Thiel." Defendant argues that these comments were extraordinarily improper because a prosecutor may not misstate the burden of proof by suggesting incorrectly what the jury must find in order to reach a certain verdict. (*People v. Vargas* (7th Cir. 1981), 583 F.2d 380, 386.) Specifically, he relies upon *People v. Crossno* (1981), 93 Ill. App. 3d 808, 821-22, 417 N.E.2d 827, where this court found it is error for the prosecutor to tell the jurors "that, if they believe the prosecution witnesses, they must convict the defendant."

*Crossno* reasoned that "[m]ore was involved than the credibility of the State's witnesses." In that case, the court held that the prosecutor misstated the law when he said a finding by the jury that the stories of the witnesses were sincere necessitated verdicts of guilt. (*Crossno*, 93 Ill. App. 3d at 822.) Defendant here argues that even if the jury believed the State's witnesses were "telling the truth," they still might have reasonably concluded that they were mistaken. He concludes that in Illinois, it is error for the trial court or counsel to define reasonable doubt to the jury. *People v. Eddington* (1984), 129 Ill. App. 3d 745, 473 N.E.2d 163.

The State denies that it attempted to shift the People's burden of proof in closing argument to the jury, but properly rebutted defense counsel's assertions that reasonable doubt flowed from the testimony

of defense witnesses. Thus, the State contends that the trial court properly allowed the prosecutor's response (see *People v. Johnson* (1986), 114 Ill. 2d 170, 499 N.E.2d 1355), to defense counsel's following comments:

> "[DEFENSE COUNSEL]: Paul Mandrik cooperated with them, told the police something they didn't want to hear, told the State something they didn't want to hear because his testimony, his testimony alone, is a reasonable doubt."

■ We find no attempt by the State here to quantify or otherwise define reasonable doubt to the jury. (*Cf. Crossno*, 93 Ill. App. 3d 808, 417 N.E.2d 827.) *Crossno* is distinguishable from the statement complained of here because the prosecution in *Crossno* reduced the issue of guilt to the credibility of the witnesses as a matter of law, while the prosecutor here merely argued that if the jury found the prosecution witnesses to be credible, they "could and should" find defendant guilty. To the contrary, the prosecutor here argued only that the State's evidence was proof of defendant's guilt beyond a reasonable doubt.

Defendant next argues that the prosecutor impugned the integrity of defense counsel by accusing him of trying to mislead or confuse the jury through remarks made during rebuttal closing argument. At the beginning of his rebuttal closing argument, the prosecutor told the jury:

> "[PROSECUTOR]: When I heard counsel's opening statement to you a couple of days ago, when I heard his cross-examination of the witnesses throughout this trial, now having heard his closing argument, I realized that the defense really isn't identification or alibi at all; it really isn't a recognized defense at all. What it is, it is the defense of confusion."

The prosecutor also repeatedly referred to a "defense of confusion" throughout the remainder of his closing argument. However, the State counters that its remarks were proper rebuttal to defense counsel's insinuation that the prosecution failed to produce existing evidence. Defense counsel stated:

> "[DEFENSE COUNSEL]: You can determine in arriving at reasonable doubt whether or not there was any scientific, forensic evidence that indicated that Mr. Rodriguez was guilty, that he was there, or you can determine whether or not there isn't any."

Because defense counsel was attempting to draw the jury's attention away from the evidence presented at trial by focusing on evidence

that was supposedly not presented, the State contends it was necessary to shift the focus back to the evidence and facts of the case.

■ Prosecutorial comment not intended to distract a jury's attention from the facts before them—but couched in terms of specific trial—will not be found to be error. (*People v. Britz* (1984), 128 Ill. App. 3d 29, 470 N.E.2d 1059.) Here, the prosecutor never accused defense counsel of any wrongdoing, or of lying (*cf. People v. Ray* (1984), 126 Ill. App. 3d 656, 660, 467 N.E.2d 1078); rather, the comments were restricted only to the weaknesses in the defense and to those comments made by defense counsel in closing argument.

■ Finally, defendant asserts that the prosecution improperly shifted the burden of proof by telling the jury that defense counsel had an obligation to call Niva DeMartino as a witness. Again, the State counters that the comment was a justified response to defense counsel's statement to the jury that Niva had not been called by the prosecution.

In relevant part, defense counsel stated:

"[DEFENSE COUNSEL]: He (Thiel) also said that when he was struggling with the man at the building, he heard Niva at the third floor say, 'Danny, Danny, he has got a gun,' speaking of the other person. Niva is a person who obviously had not been called during this case."

The prosecutor stated:

"[PROSECUTOR]: But why are they talking about that? Why are they talking about Niva, who could have been called as a witness? If they thought Niva had anything to add to this case, this [*sic*] could call her. They had the same subpoena power, the same power to bring in witnesses to testify in this case as we do. So why does counsel throw that one out, why Niva didn't testify, because he wants you to think about that.

\* \* \*

He wants you to forget how certain they (Gina and Thiel) were when they pointed to him (defendant) in court \* \* \*."

Our review of the foregoing comments indicates that the prosecutor's remarks were made in response to defense counsel's comments and thus were proper. Even if the comments were error, defendant suffered no substantial prejudice because of the comments, given the overwhelming evidence presented by the State against him. See *People v. Scott* (1990), 194 Ill. App. 3d 634, 551 N.E.2d 280.

Defendant next asserts that this court should reduce his sentence for murder or remand the cause to the trial court for a new sentencing hearing. He contends that the trial court considered an improper

factor in aggravation when it noted that the conduct of defendant caused "the ultimate serious harm" to Klish. He also assigns as error the trial court's consideration of an unsworn representation made by the prosecutor concerning a purported juvenile conviction against defendant.

According to the presentence investigation report, defendant had no prior criminal record, juvenile or adult. However, the prosecutor stated in aggravation that the defendant had been "sentenced to 18 months" for the "charge of attempt [sic] battery, aggravated batter [sic]." When the trial court overruled defense counsel's objection, the prosecution went on to say that defendant had been "sentenced to probation in juvenile court on the aggravated battery."

It is well settled that it is not error for the trial court to hear evidence of a prior juvenile commitment if the record shows that the trial judge placed no reliance on such commitment in passing sentence. (*People v. Reno* (1974), 17 Ill. App. 3d 348, 308 N.E.2d 3.) It is also well settled that reliance by a trial court on an improper aggravating factor does not always require a remand for resentencing, especially where it can be determined from the record that the weight placed on an improperly considered factor was so insignificant that it did not lead to a greater sentence. *People v. Mattingly* (1989), 180 Ill. App. 3d 573, 536 N.E.2d 257.

In *People v. Moore* (1988), 178 Ill. App. 3d 531, 533 N.E.2d 463, this court held that the trial court's consideration of defendant's conduct in causing the victim's death was improper because death is implicit in the offense of murder; however, the court declined to vacate defendant's sentence or remand for resentencing. The court therein reasoned that consideration of the improper factor in the sentencing process was insignificant and did not lead to imposition of a greater sentence where the trial court focused on several other factors as well and placed the greatest emphasis on defendant's prior criminal acts and violation of probation. *Moore*, 178 Ill. App. 3d at 544.

Here, it is clear from the record that the trial court did not rely on this factor alone in sentencing the defendant. It also focused on the senselessness of the shooting and the need to deter future violent crimes. Accordingly, based on the record below, we find that the weight placed on the improper factor, the mention of Klish's death, was fleeting. Such remark was insignificant when viewed in context and in light of the record which reflects that the trial court did not impose a greater sentence on defendant. See *People v. White* (1986), 114 Ill. 2d 61, 67, 499 N.E.2d 467.

Lastly, defendant contends that the trial court abused its discretion in sentencing him to the maximum terms for murder and attempted murder (*People v. Steffens* (1985), 131 Ill. App. 3d 141, 475 N.E.2d 606); in particular, because of his lack of criminal history.

The standard of review to be applied by this court when considering the propriety of granting a reduction of sentence is enunciated in *People v. Jenkins* (1984), 128 Ill. App. 3d 853, 857, 471 N.E.2d 647. The *Jenkins* court opined:

> "Sentencing decisions are matters of judicial discretion, and so long as the sentence imposed is within the statutory limits, we may not exercise our power to reduce it absent a finding that the court has abused that discretion [citation], since the trial court has a better opportunity to acquire information about the defendant and assess factors in aggravation and mitigation [citation]. A rebuttable presumption arises that the sentence imposed was proper and is only overcome by an affirmative showing that the sentence imposed varies greatly from the purposes and spirit of the law or is manifestly violative of constitutional guidelines." 128 Ill. App. 3d at 857.

■ In the present case, the sentence does not violate "constitutional guidelines." Further, the record indicates that the court articulated its reasoning for imposition of the maximum sentences after considering the factors presented to the court in both aggravation and mitigation. The only mitigating factor presented was defendant's lack of criminal background. This court will not disturb a trial court's imposition of a sentence unless the sentence is grossly disproportionate to the nature of the offense (*People v. Cabrera* (1987), 116 Ill. 2d 474, 493, 508 N.E.2d 708), and is a clear abuse of discretion. A judgment as to the appropriate sentence depends on the facts of each case, considering such relevant factors as the defendant's age, demeanor, mentality, habits, general moral character, credibility, and social environment, along with the nature and circumstances of the offense. (*People v. Saldivar* (1986), 113 Ill. 2d 256, 268, 497 N.E.2d 1138.) We find no abuse of discretion, and we affirm the sentence of 40 and 30 years, respectively, for murder and attempted murder.

Affirmed.

BUCKLEY, P.J., and CAMPBELL, J., concur.