THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JACKIE WILSON, Defendant-Appellant.

First District (5th Division)    No. 1—89—1555

Opinion filed November 24, 1993.—Rehearing denied January 12, 1994.

Kenneth Jones, of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Kevin Sweeney, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE GORDON delivered the opinion of the court:

## BACKGROUND

On February 9, 1982, defendant and his brother, Andrew Wilson, were involved in the fatal shootings of Chicago police officers William Fahey and Richard O'Brien and the taking of their service revolvers. In 1983, defendant and his brother were each convicted of two counts of murder for the deaths of the two officers and two counts of armed robbery for the taking of their service revolvers. In 1985, the appellate court, relying on *People v. Zehr* (1984), 103 Ill. 2d 472, 469

N.E.2d 1062, reversed defendant's conviction, holding that the trial court had erred in refusing to instruct prospective jurors on the effect of defendant's failure to testify. (*People v. Wilson* (1985), 139 Ill. App. 3d 726, 487 N.E.2d 1015.) The State petitioned for leave to appeal and the supreme court reversed the appellate court stating that the rule established in *Zehr* was to be given only prospective application. (*People v. Wilson* (1986), 112 Ill. 2d 567, 513 N.E.2d 844.) On remand from the supreme court for consideration of other issues raised in defendant's initial appeal, the appellate court held that the trial court had committed reversible error, in denying defendant's motion for a severance and in admitting evidence that there was an outstanding arrest warrant for defendant on the day of the killings, and accordingly remanded the case for a new trial. (*People v. Wilson* (1987), 161 Ill. App. 3d 995, 515 N.E.2d 812.) Defendant was retried separately from his brother and convicted by a jury for two counts of armed robbery and one count of murder. At defendant's second trial, the following relevant events and testimony occurred.

FACTS

During the proceedings prior to defendant's second trial, the trial judge offered defendant the choice of conducting individual *voir dire* examination of prospective jurors in chambers, outside the presence of the defendant, or of selecting the "jury the same way we do every other jury." After defense counsel stated that he wanted individual examination of the jury with defendant present, the trial judge ruled that the jury would be selected pursuant to the usual method, in open court with the defendant present. Prior to the arrival of the prospective jurors in the court room, defense counsel, in the presence of defendant, informed the court, "I believe you will want on record that we will waive [defendant's] presence for individual sequestered jurors." Defense counsel then continued:

> "I have discussed with my client, Jackie Wilson, that in chambers I will be authorized pursuant to the Court's instruction to conduct some personal *voir dire* examination, up to two minutes with respect to each of the jurors, assuming it is along the line of appropriate questions. I have already advised Mr. Jackie Wilson that because of potential security problems that you would prefer that he not be in your chambers. We have discussed the alternative, which would be jury selection in open court, without the ability of counsel to individually talk to the jurors. It is my understanding that and my belief that Jackie Wilson concurs in my belief that we will prefer to have the individual sequestered *voir dire* examination to occur in your chambers, for which Jackie Wilson's presence will be waived."

The trial court then stated that defense counsel would nevertheless have full opportunity to consult with his client by excusing himself from chambers whenever necessary. During the selection process, defense counsel took advantage of the court's offer, leaving to consult with defendant as each juror was selected.

At trial, the State introduced the eyewitness testimony of Tyrone Sims. Sims testified that at the time of the killings he was at home in his living room when he noticed a police car pulling over a brown Chevrolet. He identified defendant as the driver of the Chevrolet and Andrew Wilson as its passenger. He said that defendant and the officer driving the police car, later identified as Officer O'Brien, got out of their cars and spoke. Officer O'Brien proceeded to walk to the Chevrolet and peer inside. Andrew exited the Chevrolet and walked down the passenger side of that car. The other officer (Fahey) saw Andrew throw a jacket into the car and apparently ordered Andrew to give him the jacket. Andrew returned to the car and handed the jacket to Fahey. After searching the pockets of the jacket, Fahey grabbed Andrew and they struggled. Andrew grabbed Officer Fahey's service revolver from his holster and shot Fahey in the back of the head as Fahey was trying to handcuff him. Andrew then turned and fired a shot across the car at Officer O'Brien. Sims then saw Andrew get up on the car and fire two more shots at Officer O'Brien. Andrew shouted "Let's get out of here" to defendant and they took off. Sims subsequently gave a statement to the police while under hypnosis.

Thomas Musillami testified that he saw defendant crouching over the body of Officer O'Brien after O'Brien was shot.

Defendant's flight from the scene was observed by Dwayne Hardin. Hardin noticed that both defendant, who was driving the car, and Andrew were smiling as they drove away.

The State also introduced a confession given by defendant. The admission of this confession at defendant's first trial was upheld by this court in defendant's initial appeal following his first conviction. *People v. Wilson* (1985), 139 Ill. App. 3d 726, 487 N.E.2d 1015.

In that statement, defendant said that on the morning of the shootings he and his brother, Andrew, were at the home of a friend and discussed breaking Edgar Hope out of Cook County Hospital, where he was being held in police custody for shooting a policeman. At this time, Andrew wanted to get extra guns. They left the home of their friend, with Andrew carrying a .38 caliber revolver, and burglarized the house next door. They then got into a brown Chevrolet. Defendant was driving the car with Andrew in the passenger seat when they were pulled over by Officers Fahey and O'Brien. Defendant stated that Andrew still had the gun with him. A uniformed

Chicago police officer, whom he identified as Richard O'Brien, approached the driver's side window of the car and asked for his driver's license. Defendant responded that he had one, but did not have it with him. Defendant then stepped out of the car and O'Brien leaned in to search it. At that point, Andrew left the vehicle as well. Officer Fahey was at the rear of the car on the passenger side at this time. O'Brien came up with Andrew's gun, drew his own revolver and shouted freeze. Defendant then heard a shot from the passenger side and Officer O'Brien went for cover. Defendant then saw Andrew with a gun, heard a shot and saw O'Brien fall. According to defendant's statement, Andrew told the defendant to get O'Brien's gun and he replied that O'Brien was "still there" and that he was "up and about." Defendant said that Andrew fired more shots into O'Brien and then picked up the guns, and said, "Let's go." Defendant then drove himself and his brother away from the scene with the officers' service revolvers in the car. This concluded defendant's statement.

Detective Joseph Gorman testified that the officers' service revolvers were recovered in February 1982 in the back of a beauty shop in which Andrew Wilson had been staying. Chicago police officer Joseph McCarthy testified that on February 14, 1982, Andrew Wilson was arrested and that in his possession was a bag containing surgical gloves, a handgun and a hospital smock. Officer Chester Batey testified that Jackie Wilson was also arrested on February 14, 1982, in a vacant apartment.

The State, proceeding through stipulation, offered ballistics evidence which showed that the bullet that killed Officer Fahey and three of the four bullets which struck Officer O'Brien came from Officer Fahey's gun. The fourth bullet which struck Officer O'Brien was too mutilated to identify the gun from which it was fired.

The State also introduced several statements made by defendant during the period he was incarcerated at the Cook County jail while awaiting his second trial. George Crosby, a correctional officer at the jail, testified that after defendant had an altercation with another correctional officer, defendant said that "you should have killed us when you had the chance, killed me when you had the chance, because I already killed 2 Chicago police officers, and I am not afraid of hurting anyone else." Crosby stated that shortly thereafter, defendant reaffirmed his statement that he had already killed two Chicago police officers. Correctional Officer Thomas Cavalone corroborated Crosby's testimony. Correctional Officer Ronald Gamble related that on a different occasion, defendant threatened to kill a guard "just like [I] did the other 2 policeman, way back whenever it was."

The State also offered the testimony of William Coleman, a/k/a William Clarkson (Coleman), a fellow inmate of defendant's at Cook County jail. Coleman, a citizen of Great Britain, was being held there for possession of cocaine with intent to deliver and for an earlier escape from the jail. Coleman testified when he first met defendant he asked whether he was Andrew Wilson's brother and whether he had killed the cops. Defendant responded that he was Andrew's brother and confirmed that he and his brother had killed the officers. During a subsequent conversation, defendant explained to Coleman that the killings took place as they were pulled over by Officers Fahey and O'Brien while on their way to break Edgar Hope out of Cook County Jail Hospital. Defendant told Coleman that when they were pulled over, he told his brother, "let's take him" and that they then "blew [the officers] away."

Coleman testified that he became the intermediary between defendant and Andrew, who were housed in different units of the jail, concerning plans for a mass escape involving defendant and other prisoners. Coleman stated that he and defendant would meet and talk in the jail law library. The escape was set for September 1, 1988, and the prisoners involved had cut a hole in a steel panel in the ABO unit, the unit in which Andrew was housed, and had planned to climb up an air shaft with a homemade rope. Defendant had previously related to Coleman that he had been fighting prisoners and guards in an attempt to get transferred to the ABO unit. Defendant also told Coleman that he wanted to escape to kill the "hypnotized witness" (Tyrone Sims).

The day before the planned escape, Coleman reported the plan to jail authorities naming defendant as one of the prisoners involved. A search conducted by correctional officers revealed that a large hole leading to an air shaft had been made in the ABO unit, that a homemade rope was hanging down the air shaft and that there was a cache of homemade knives and hacksaw blades in that air shaft.

On cross-examination, defense counsel impeached Coleman by eliciting that he expected to receive benefits for his testimony and that he had prior convictions as well as pending criminal charges. Defense counsel also attempted to impeach Coleman by showing that the law library sign-in sheets did not corroborate that he and defendant were in the library contemporaneously on all the days encompassed in Coleman's testimony. Defense counsel also repeatedly asked Coleman if his trial testimony was consistent with what he told jail officials when he reported the escape and with what he told various assistant State's Attorneys during three subsequent meetings. Coleman responded that his trial testimony was largely consistent

with his earlier statements except in one or two instances for which he then offered explanations.

On redirect, the prosecution posed the following question to Coleman:

"Q. From the time that you first came forward with the escape attempt through the times that you talked to the assistant state's attorneys, the various ones, through every one of those interviews, have you ever changed the story that you originally told in this case?

A. No, sir."

In its closing argument and rebuttal, the prosecution made several remarks and comments which defendant assigns as error on appeal. Because of their length and number, the remarks will be set forth later in this opinion as each of the alleged errors is discussed and analyzed. After closing arguments, defense counsel moved for a mistrial on the basis of two of those remarks. This motion was denied.

In instructing the jury, the trial court gave Illinois Pattern Jury Instructions, Criminal, No. 5.03 (2d ed. 1981) (hereinafter IPI Criminal 2d No. 5.03), on the law of accountability. The court rejected defendant's proposed addition to that instruction that mere presence at the scene of a crime is insufficient to establish accountability. The jury subsequently found defendant guilty of the murder of Officer O'Brien, but acquitted him of the murder of Officer Fahey. The jury also found defendant guilty of the armed robbery of both officers.

At the sentencing hearing, the State introduced evidence that defendant had been convicted of burglary in 1977 and 1979 and theft in 1980. The State also offered evidence that defendant was involved in two additional armed robberies, one which occurred on December 3, 1981, and one which occurred on February 4, 1982. Defendant subsequently received a sentence of natural life imprisonment for the murder of Officer O'Brien. Defendant also received 30 years' imprisonment for the armed robberies of Officers Fahey and O'Brien to run consecutively to his sentence for the murder of Officer O'Brien.

OPINION

On this appeal defendant raises the following contentions: (1) he was denied his constitutional right to be present at all critical stages of the proceedings because the individual examination of prospective jurors occurred outside his presence in the judge's chambers; (2) that the trial court erroneously admitted the evidence of the mass escape plot where there was no credible evidence which established his involvement in that plot; (3) that the prosecution made improper and prejudicial remarks during its closing argument and rebuttal such as

to deny him a fair trial; (4) that the jury should have been instructed that mere presence at the scene of a crime in and of itself was not sufficient to establish legal accountability; (5) that there was insufficient evidence to prove that he was accountable for the actions of his brother; (6) that his confession was erroneously admitted because it was involuntary and obtained in violation of his right to counsel; (7) that his conviction for the armed robbery of Officer Fahey was legally inconsistent with his acquittal for Officer Fahey's murder; and (8) that the trial court abused its discretion in sentencing him to a term of natural life imprisonment for the murder of Officer O'Brien when his role in that crime was passive.

## I. *VOIR DIRE*

Defendant's first contention on appeal is that he was denied his due process rights under the fifth, sixth and fourteenth amendments of the United States Constitution (U.S. Const., amends. V, VI, XIV), and under article 1, section 8, of the Illinois Constitution (Ill. Const. 1970, art. I, § 8), because he was not present during the *voir dire* examination of the prospective jurors. Defendant concedes that no objection was made at trial and that this issue was not raised in a post-trial motion but asks that we consider the issue under the plain error doctrine.

■ Plain error is present "only when a defendant is deprived of a substantial right, and thus is deprived of a fair trial, or when an error is made in a case with closely balanced evidence." (*People v. Bean* (1990), 137 Ill. 2d 65, 80, 560 N.E.2d 258.) As will be discussed below in determining whether certain errors which occurred during the prosecution's closing argument were harmless or prejudicial, the application of the "closely balanced" prong is inapplicable here as the evidence favoring the prosecution is, in fact, overwhelming. Consequently, defendant's conviction will only be reversed on this point if his exclusion from the *voir dire* deprived him of a constitutional right to be present which in turn would have denied him his right to a fair trial. (*People v. Henderson* (1990), 142 Ill. 2d 258, 291, 568 N.E.2d 1234.) In this case, defendant's argument fails on this prong as well since he did not show that he was denied his right to be present or that he was denied his right to a fair trial.

At the outset, we note that the defendant does have a right to be present at all critical stages of the proceedings against him. The United States Supreme Court has long ago established that the right of presence extends "at least from the time when the work of impaneling the jury begins." (*Lewis v. United States* (1892), 146 U.S. 370, 374, 36 L. Ed. 1011, 1013, 13 S. Ct. 136, 137.) In part, the ratio-

nale for insuring defendant's presence during the impanelling of jurors is that "his life or liberty may depend upon the aid which, by his personal presence, he may give to counsel and to the court and triers, in the selection of jurors." *Hopt v. Utah* (1884), 110 U.S. 574, 578, 28 L. Ed. 262, 265, 4 S. Ct. 202, 204.

The right to be present, however, just like other constitutional rights, can be waived by the defendant. (*People v. Martine* (1985), 106 Ill. 2d 429, 439, 478 N.E.2d 262 (determining that defendant waived her right to be present during an offer of proof in a voluntary, knowing, and intelligent manner when defendant departed from the courtroom without objection with a "complete understanding of what was happening"); see also *State v. Hooper* (1985), 145 Ariz. 538, 545, 703 P.2d 482, 489 (holding defendant was not denied his right to be present where, upon being justifiably restrained with shackles, he chose not to be present during the *voir dire* to avoid having the jury see him in the restraints).) Here, the record evinces such waiver of defendant's right to be present during the individual *voir dire* of the prospective jurors. Speaking to the court with the defendant in the room, defense counsel unequivocally told the court that "we will waive [defendant's] presence for individual sequestered jurors." Defense counsel stated that he discussed the available alternatives with his client and that defendant preferred to allow defense counsel to individually examine jurors in the judge's chambers and would thus waive his presence.

Defendant contends that his counsel's representations were insufficient. He urges that his right to be present could only be waived through his own personal declaration. We disagree. The case of *People v. Sanders* (1991), 209 Ill. App. 3d 366, 568 N.E.2d 200, is analogous. There, defense counsel stated, in defendant's presence, that he had advised defendant not to testify. Defendant remained silent. On appeal, Sanders contested that he had been deprived of his constitutional right to testify. The court rejected this claim, noting Sanders' silence throughout the entire trial, including his silence when his attorney represented that he had advised defendant not to testify. The court reasoned that Sanders could have countermanded his attorney's statement if he so desired. Since he did not do so, the court concluded that Sanders' silence was "a matter of trial strategy with which he agreed." (*Sanders*, 209 Ill. App. 3d at 376.) Likewise here, defendant's silence was sufficient to show his full agreement and acquiescence with his counsel's trial strategy. See *Williamson v. State* (1993), 207 Ga. App. 565, 428 S.E.2d 628 (counsel's representation of his client's agreement to waive his right to be present during jury selection was held sufficient since defendant was in court when his

attorney made the representation that his client agreed to have jury selection take place in his absence).

Defendant's argument would place a duty on the trial court to examine each defendant directly as to whether he acquiesced in the waiver of this right. Such obligations are placed on the trial court by rule and statute with respect to the acceptance of guilty pleas (134 Ill. 2d R. 402; Ill. Rev. Stat. 1991, ch. 38, par. 113—4(c) (trial court must admonish defendant "personally in open court, informing him of and determining that he understands:" the nature of the charge; the minimum and maximum sentence as prescribed by law, that he has the right to plead not guilty, and that pleading guilty waives his right to a trial); 134 Ill. 2d R. 605 (trial court must advise defendant after a guilty plea that he has a right to appeal and that he must file a motion vacating the plea within 30 days of the judgment)) and the waiver of a jury trial. (Ill. Rev. Stat. 1991, ch. 38, par. 103—6 (every person has a right to a jury trial unless "understandingly waived by defendant in open court").) However, there is no comparable supreme court rule or statute requiring such direct inquiry to defendant personally, rather than to his counsel, to establish a waiver of defendant's right to be present at trial or jury selection. *Cf. People v. Raso* (1992), 234 Ill. App. 3d 1099, 602 N.E.2d 53 (trial court has no duty to inquire specifically about defendant's waiver of his right to testify or affirmatively set such waiver on the record where there was no statute or supreme court rule requiring such action).

Moreover, although defendant has a "right to attend every stage of his trial, including jury selection," the "situations are limited *** in which denial of this broad right of presence constitutes a violation of the Illinois and United States Constitutions." (*People v. Williams* (1992), 235 Ill. App. 3d 638, 647, 601 N.E.2d 1070.) "[R]eversal of a conviction and remand for a new trial occur only when as a consequence a defendant is deprived of a fair and just trial, such as when a defendant is tried by a prejudiced jury." *(People v. Henderson* (1990), 142 Ill. 2d 258, 291, 568 N.E.2d 1234.) The underlying rationale of this rule is that the "Illinois and the United States Constitutions guarantee defendants a jury that is impartial, not a jury of their choice." *People v. Henderson*, 142 Ill. 2d at 291-92. See also *People v. Bean*, 137 Ill. 2d at 88-89 (defendant's claim that his right of presence was violated was rejected when defendant failed to challenge the impartiality of the jury); *People v. Beardslee* (1991), 53 Cal. 3d 68, 806 P.2d 1311, 279 Cal. Rptr. 276 (defendant was not prejudiced by exclusion from a portion of the *voir dire* where defendant's presence would have had little purpose and defendant's attorney, who announced defendant's waiver, determined that defendant's presence would not be beneficial).

Here, there has been no indication that defendant's absence prevented defense counsel from selecting a fair and impartial jury. This is particularly the case in view of the fact that trial counsel was given the opportunity after his questioning of each juror to leave and confer with defendant about that juror's selection.

Citing *Estelle v. Williams* (1976), 425 U.S. 501, 48 L. Ed. 2d 126, 96 S. Ct. 1691 (defendant appeared in court in jail attire), and *People v. Brown* (1977), 45 Ill. App. 3d 24, 358 N.E.2d 1362 (defendant shackled during trial), defendant argues that his exclusion from the *voir dire* gave the jurors the impression that he was a security risk and thereby eroded the presumption of innocence to which he was entitled. We disagree. First, defendant chose to absent himself from jury selection. He voluntarily waived his presence insofar as he was given a choice to be present if selection occurred in open court. Second, unlike the obvious potentially prejudicial impact which would result from requiring a defendant to appear shackled or in prison attire, conducting *voir dire* outside the presence of the defendant does not immediately conjure a derogatory image of defendant as a criminal or as one who poses a danger to the safety of the jurors. We note that defendant's decision was made at the outset of the selection process, rather than in response to a juror's expressed security concern as in *United States v. Gagnon* (1985), 470 U.S. 522, 84 L. Ed. 2d 486, 105 S. Ct. 2350 (defendant excluded from *in camera* examination of juror who expressed concern that defendant was sketching jurors during trial). The reason for requiring defendant to choose, namely, the trial judge's concern for the security of his chambers, was never disclosed or alluded to in the jury's presence. Consequently, there is no reasonable basis upon which to presume that the jury would attribute defendant's absence to any negative factors. Accordingly, we cannot agree that defendant's exclusion from this stage of the trial adversely "affected the impartiality of the jury" such to deny him a fair trial and thus find that plain error is not present. *People v. Bean*, 137 Ill. 2d at 81; *People v. Williams*, 235 Ill. App. 3d at 647 (defendant's absence from portions of the *voir dire*, all actual challenges to prospective jurors and interviews of two jurors, did not result in plain error or deprive him of a right to a trial by an impartial jury).

## II. ADMISSION OF THE COOK COUNTY ESCAPE PLOT

Defendant next contends that he was deprived of his right to a fair trial because the trial court erroneously admitted evidence that he was involved in the planned escape from Cook County jail. Defendant argues that this is impermissible evidence of other crimes and

that, even if otherwise admissible, there was no credible evidence that he was so involved.

Evidence of other crimes or wrongful conduct is not admissible to show the defendant's character or propensity to commit crime as the "law distrusts the inference that because a man has committed other crimes, he is more likely to have committed the crime charged." (*People v. Kimbrough* (1985), 138 Ill. App. 3d 481, 484, 485 N.E.2d 1292.) Evidence of other crimes, however, is admissible for numerous other reasons, including to show consciousness of guilt. *People v. Bartall* (1983), 98 Ill. 2d 294, 456 N.E.2d 59; *People v. Baptist* (1979), 76 Ill. 2d 19, 389 N.E.2d 1200.

■ Here, the admission into evidence of defendant's participation in the planned escape is proper to show his consciousness of guilt. In *People v. Davis* (1963), 29 Ill. 2d 127, 130, 193 N.E.2d 841, our supreme court stated that "[f]light from justice may be indicative of consciousness of guilt, and, if unexplained, is a circumstance which may be considered by the jury, in connection with the other evidence in the case, as tending to prove guilt." Escapes or attempted escapes from police custody after arrest have consistently been determined to be admissible for that purpose. See *People v. Sullivan* (1977), 48 Ill. App. 3d 787, 362 N.E.2d 1384.

On point is *People v. Robinson* (1980), 91 Ill. App. 3d 1138, 415 N.E.2d 585. There, the court held that evidence of an attempted escape or an escape was admissible to raise a presumption of guilt for the crime charged. (*People v. Robinson*, 91 Ill. App. 3d at 1145.) The court so held notwithstanding the fact that defendant was being held in jail on more than one charge and had already received a sentence on one charge. The court ruled that these additional facts would only go to the weight of the inference to be drawn from the escape attempt, not its admissibility. See also *People v. Wright* (1978), 57 Ill. App. 3d 940, 373 N.E.2d 753 (evidence of altercation between sheriff and defendant during trip from courtroom to jail was not inadmissible evidence of other crimes; rather, evidence was admissible as an attempted escape which could be considered in establishing guilt); *People v. Dunn* (1987), 160 Ill. App. 3d 11, 513 N.E.2d 113 (evidence that defendant escaped from jail and fled country was admissible at defendant's trial for underlying charges).

Defendant contends that even if otherwise proper, this evidence should not have been admitted because it was not credible. Specifically, defendant complains that most of the evidence linking him with the escape attempt came from Coleman, a known convicted felon, whose testimony was impeached. However, impeachment evidence showing that Coleman received consideration in return for his

testimony (*People v. Stock* (1973), 15 Ill. App. 3d 722, 304 N.E.2d 646), or that he had a criminal record (*People v. Peto* (1967), 38 Ill. 2d 45, 230 N.E.2d 236), does not preclude the admission of this evidence. Rather, it goes only to its weight. *People v. Stock*, 15 Ill. App. 3d at 729 (fact that witness has reason to curry favor with the State's Attorney goes to the weight to be given his testimony); *People v. Neumann* (1986), 148 Ill. App. 3d 362, 499 N.E.2d 487 (witness' criminal record does not render witness incompetent).

Moreover, in this case, Coleman's testimony with respect to the escape attempt was substantially corroborated by the physical evidence which was uncovered after he reported the plot to the authorities. This evidence included a hole in a storeroom wall leading to an air shaft. In the air shaft, which led to the roof, the authorities found a homemade rope, hacksaw blades, and two homemade knives. There was also some independent evidence indicating that defendant was fighting with guards and was in fact scheduled to be transferred to the ABO unit on the day before the escape. (*People v. Sheridan* (1978), 57 Ill. App. 3d 765, 373 N.E.2d 669; see also *People v. Smith* (1968), 41 Ill. 2d 158, 242 N.E.2d 198.) As such, we cannot say that Coleman's testimony was so patently incredible as to be rendered inadmissible.

### III. IMPROPER REMARKS IN CLOSING ARGUMENT

The defendant next contends that he was denied a fair trial by six separate extended remarks made during the prosecution's closing argument. We note, before setting forth each of these remarks, the general law which applies to prosecutorial comment. A prosecutor is accorded wide latitude in closing argument, and the scope of permissible argument is within the trial court's discretion. (*People v. Gant* (1990), 202 Ill. App. 3d 218, 559 N.E.2d 923.) As such, in determining the propriety of a remark made during closing argument, a reviewing court will sustain the trial court's ruling absent a clear abuse of discretion. (*People v. Moreno* (1992), 238 Ill. App. 3d 626, 606 N.E.2d 514.) The comments of the prosecutor which are assigned as error are to be examined in the context of both the State's and defense counsel's entire closing argument. (*People v. Gant*, 202 Ill. App. 3d at 224.) Improper remarks made by the prosecutor will only require a new trial where the result of defendant's trial would have been different had the improper comments not been made. *People v. Moreno*, 238 Ill. App. 3d at 634; *People v. Gant*, 202 Ill. App. 3d at 225.

## A. SYMPATHY

Defendant first takes issue with a statement made by the prosecutor in rebuttal which defendant contends engendered undue sympathy for the victims and inflamed the passions of the jury. The prosecutor said:

"Folks, I am not asking you to convict this man out of sympathy or pity for the family that he's talked about. Or out of public pressure. I ask you to convict him because the evidence convicts him. The evidence convicts him. But, don't convict him out of anger, either. Convict him because he convicted himself. However, don't be ashamed of that anger you must feel, because criminals are properly the object of anger.

Perpetrators of vicious crimes as Jackie Wilson are properly the object of great anger in our society. Because a society that doesn't care when someone else is killed is not a moral community at all, are they. Because they are a community then that only cares about themselves. It's that expression of caring and anger through your just verdicts of guilty that show the community how you feel. Because they will care only so much as you care. And in that caring, remember, this guy isn't sitting here today because we picked his name out of a phone book. Or because he won the bad luck lottery. He sits in this chair right here, because he picked this chair. He picked that seat on February 9th of 1982 when he participated in one of the most sinister and dangerous plots imaginable.

\* \* \*

Use your God given common sense. Fulfill your oath as jurors. And in doing that, serve and protect. And then, you will be doing what thousands of police officers since Fahey and O'Brien have been doing for years. Serve as impartial jurors. Okay. And when you do that, protect even the rights of this evil man before you convict him.

Serve your community with that fair verdict of guilty and protect all of us from injustice. From the pain that we have to go through when vicious crimes like this go unpunished. Because we lack the courage or the common sense to confront those hard truths that evil men like that put to us. Protect us from the injustice when men like that are allowed to walk out of courtrooms and laugh because of sympathy or pity or the confusion of lawyers.

Jackie Wilson when referring to those police officers referred to them as mother fuckers. That's not what I call them. I call men like this heroes. Chicago Police Officers. Has got to be one of the most thankless jobs there is. And you put your life on the line every day for people you don't even know, most of them you are never going to meet. Men who patrol our streets during the

winters day when its so cold we bundle up inside our own homes. During the sweaty heat of a Chicago summer when we're looking for cooler places to be, they patrol our streets. In the still of the night when we sleep in the safety of our own beds, they serve and protect.

Seven years, as I told you in my opening statement is a long time, folks. And in that time many Chicago Police Officers have patrolled South Morgan Street and other streets of your city. But not one Chicago Police Officer will wear star number 4194, or 5337. Because these stars belong to William Peter Fahey and Richard James O'Brien. And they symbolize what those men dedicated their lives to. To their community. To serve and protect. And that's forever."

■ We note at the outset that defense counsel did not object to these statements at trial and thus any error relating to them is waived. (*People v. Mitchell* (1992), 152 Ill. 2d 274, 604 N.E.2d 877.) Even if the propriety of these statements had been properly preserved for review, we would not find that these statements constitute reversible error.

Much of the foregoing statement comes within the proper latitude afforded a prosecutor during closing argument. In closing argument, a prosecutor is allowed to (1) urge the jury to do its sworn duty, (2) to promote the fearless administration of the law, and (3) to comment on the adverse impact of crime on the community. (*People v. Johnson* (1991), 220 Ill. App. 3d 550, 561 N.E.2d 118.) A significant part of the aforementioned statements falls into these three categories. See, *e.g.*, *People v. Horne* (1984), 129 Ill. App. 3d 1066, 1072, 473 N.E.2d 465 (prosecutor's comment telling jury that it stood "between [defendant] and the streets, where he can [wreak] more havoc on today's society" was proper as a comment on the results of crime and an urging of the fearless administration of law); see also *People v. Johnson*, 220 Ill. App. 3d at 561-62 (prosecutor's references to protect "your streets, your community" from defendant and that jury was there to see that justice was done, were not improper); *People v. Fisher* (1988), 169 Ill. App. 3d 785, 523 N.E.2d 368.

The prosecutor may also refer to the defendant as an evil man and comment on the particularly brutal nature of a crime if his statements are supported by the evidence. (*People v. Sanford* (1983), 116 Ill. App. 3d 834, 452 N.E.2d 718; *People v. Bunting* (1982), 104 Ill. App. 3d 291, 432 N.E.2d 950.) Here, as is manifest from defendant's own confession, as well as the eyewitness testimony presented, there is no question that the prosecutor's characterization of defendant as an evil man who had participated in a brutal and sinister plot finds

sufficient support in the evidence. As such, the prosecutor's characterization was not improper. See *People v. Stuckey* (1992), 231 Ill. App. 3d 550, 596 N.E.2d 646; *People v. Sanford*, 116 Ill. App. 3d at 843-44.

Defendant argues that the prosecution also improperly raised and played on the jury's sympathy by telling the jury to disregard any such sympathy and convict based on the evidence before it. We disagree. On their face, the prosecutor's comments purport to recognize that the facts of this case naturally engender such sympathy. As such, it was not improper to admonish the jury to set aside any sympathy for the two victims and decide the case based on the evidence before it. While the prosecutor may well have had a self-serving motive in making this comment, that motive would more likely be to impress the jurors with the strength of his evidence in stating that he did not seek a verdict based on sympathy or pity. *Cf. People v. Mitchell*, 152 Ill. 2d at 335-36.

We do find, however, that to the extent that the prosecutor's comments dwell upon the services performed by the victims as police officers, those comments were overreaching. (See *People v. Bartall* (1982), 105 Ill. App. 3d 867, 874, 435 N.E.2d 152.) But, those comments, although technically improper, constituted harmless error in light of the overwhelming evidence presented against the defendant. Defendant's own confession established that he and his brother were on the way to forcibly break a dangerous felon out of police custody when they were pulled over. His own confession also detailed his participation in the killing of Officer O'Brien and the armed robberies. In addition to defendant's confession, the State offered the eyewitness testimony of Tyrone Sims, which placed defendant at the scene of the crime, and the testimony of Dwayne Hardin, which established that defendant drove away from the scene smiling. Additionally, the State introduced subsequent statements made by defendant to correctional officers and inmate Coleman in which defendant admitted that he and his brother killed the officers, including defendant's statement that when pulled over by the officers he told his brother, "let's take him." In light of this overwhelming evidence, we cannot say these remarks by the prosecutor materially prejudiced defendant. *People v. Benoit* (1992), 240 Ill. App. 3d 185, 608 N.E.2d 250; *People v. Cook*, 201 Ill. App. 3d 449, 558 N.E.2d 1268; *People v. Spencer* (1982), 107 Ill. App. 3d 835, 438 N.E.2d 603.

## B. MISSTATING THE LAW OF ACCOUNTABILITY

Defendant next asserts that the following statement made by the prosecutor during closing argument misstates the law of accountability.

"The law that his Honor, Judge Getty will read to you on accountability is this. 'A person is legally responsible for the conduct of another person when either before or during the commission of an offense, and with the intent to promote or facilitate the commission of an offense, he knowingly solicits, aids, abets, agrees to aid, or attempts to aid the other person in the planning or commission of an offense.' That is in legalese, ladies and gentlemen. When you go back there, take that instruction and break it down. When it says, 'A person' you put the name Jackie Wilson. To aid another person, put in the name of Andrew Wilson. When it talks about the offense they were going to commit, you put in the escape of Edgar Hope. And if you do that, the instruction will be perfectly clear to you. And the guilt of the defendant here will be perfectly clear to you. And the guilt of the defendant here will be perfectly clear to you because that instruction will read like this.

\* \* \*

The law can be no clearer than that. To tell you that he is responsible for what his brother did on the street. We don't even have to talk about what happened on the street. Because long before the officers turned on those blue lights, he was responsible for anything that happened on the way to break Edgar Hope out of jail.

\* \* \*

What happened on the street, although significant then did happen there and Jackie Wilson did significant things to tend to prove his guilt in this case is really irrelevant. Because if he just fell on the ground and covered his ears, he would still be legally responsible—

[DEFENSE COUNSEL]: Objection, Judge. That's not the law.

THE COURT: Just a moment. Court will instruct the jury as to the law. Counsel is entitled to argue his theory of the case and the reasonable inferences to be drawn from the facts. And any statement made by an attorney during closing argument not in keeping with either the facts or the law as I give it to you should be disregarded. With those guidelines you may proceed."

Defendant argues that his conviction must be reversed because the prosecutor misstated the law of accountability in commenting that defendant could be found legally accountable for the murder of the officers based on his involvement in the plan to break Edgar Hope out of police custody.

Even if we were to conclude that the prosecutor's comments misstated the law of accountability, we do not consider such

misstatements to provide sufficient grounds for reversal given the trial court's admonitions and defense counsel's response. The jury was repeatedly instructed that the prosecutor's representations as to the law were not controlling. First, prior to his statements as to "mere presence," the prosecutor accurately quoted the accountability instruction that was subsequently given to the jury. (See *People v. Walker* (1992), 230 Ill. App. 3d 377, 594 N.E.2d 1252 (considering fact that prosecutor properly quoted accountability instruction in his closing argument in determining that error which may have been present as the result of any misstatement was harmless).) Second, the trial judge admonished the jury prior to closing arguments that if an attorney made a reference to the law as contained in the jury instructions that was inconsistent with those instructions, the jury was to disregard that attorney's reference. The court then told the jurors that they were to follow the instructions as it gave them. Moreover, immediately following the remark, in response to defense counsel's objection, the trial court again told the jury that it would instruct the jury on the law of accountability and that any statement made by the attorneys to the contrary was to be disregarded. After closing arguments, the court gave the jury the correct IPI instruction on accountability and reminded the jury that it must follow the instructions. See *People v. Moreno*, 238 Ill. App. 3d at 636 (prosecutor's misstatement of the law of accountability that defendant was liable even if there was no plan to commit the crime was harmless error when trial court sustained defense counsel's objection and admonished the jury that it would instruct the jury on the law, and the trial court properly instructed the jury on the law of accountability); *People v. Taylor* (1990), 199 Ill. App. 3d 933, 557 N.E.2d 917.

Defense counsel also had the opportunity to directly respond to the prosecutor's remarks during his closing argument. In his closing, defense counsel stated:

> "Ladies and gentlemen, Jackie Wilson is not on trial for attempting to break Edgar Hope, although [the prosecution] would have you believe he is.

* * *

> Read the accountability instruction. Read the accountability instruction as well as all the other instructions that Judge Getty will give you. And determine for yourselves *** whether there is one piece of evidence as to what Jackie Wilson did at the time Andrew Wilson was killing the police officers to aid or abet or encourage or facilitate or help out or in anyway be responsible for Andrew Wilson's conduct."

(See *People v. Underwood* (1982), 108 Ill. App. 3d 846, 439 N.E.2d

1080 (prosecutor's misstatement of the law of accountability was harmless in light of fact that defense counsel had the opportunity to address such misstatement in his closing argument and the trial court correctly instructed the jury on the law); see also *People v. Walker*, 230 Ill. App. 3d at 396-97; *People v. Taylor*, 199 Ill. App. 3d at 941-42 (no reversible error exists where defense counsel also read accountability instruction to jury and made his argument).) In light of these repeated instructions to the jury that it was to follow the law as given by the court, the trial court's proper instruction on the law, and that defense counsel had the opportunity to respond to the prosecutor's statement during his closing argument, any error which was present was sufficiently cured. *People v. Johnson*, 220 Ill. App. 3d at 563.

In so holding, we note that the jury's actual verdict shows that it did not base its decision on the prosecutor's alleged misstatement as to the sufficiency of defendant's mere presence at the scene. In acquitting defendant for the murder of Officer Fahey and finding him guilty of the murder of Officer O'Brien, the jury obviously rejected the notion that defendant's mere presence established his accountability for all the crimes which occurred at that time.

Moreover, we need not conclude that the prosecutor's comments incorrectly stated the applicable law insofar as they were consistent with the "common design" rule articulated by the Illinois Supreme Court in *People v. Terry* (1984), 99 Ill. 2d 508, 460 N.E.2d 746. In *Terry*, the court stated, " 'where two or more persons engage in a common criminal design or agreement, any acts in furtherance thereof committed by one party are considered to be the acts of all parties to the common design and all are equally responsible for the consequences of such further acts.' " (*People v. Terry*, 99 Ill. 2d at 514, quoting *People v. Kessler* (1974), 57 Ill. 2d 493, 496-97, 315 N.E.2d 29.) The *Terry* court explicitly concluded that even though the substantive offense the group conspired to commit was battery, each person was accountable under the common design rule for the conduct of the other, namely murder, which was done in furtherance of the battery. (*Terry*, 99 Ill. 2d at 514-15. Accord *People v. Taylor* (1990), 199 Ill. App. 3d 933, 557 N.E.2d 917.) There, the defendant contended that the prosecutor committed reversible error by arguing during his closing argument that the offense which defendant intended to promote or facilitate referred to in the accountability instruction does not have to be the charged offense. (*People v. Taylor*, 199 Ill. App. 3d at 940-41.) The appellate court concluded that the prosecutor's statement properly stated the law of accountability, which incorporated the "common design rule." *People v. Taylor*, 199 Ill. App. 3d at 941.

Consequently, in order to establish a defendant's accountability under the common design rule, "the State need only prove that the defendant had the specific intent to promote or facilitate *a* crime, and not the actual crime for which he was charged. Once the State proved that the defendant intended to promote or facilitate *a* crime, he was responsible for *any* criminal act done in furtherance of the intended crime." (Emphasis in original.) (*People v. Miscichowski* (1986), 143 Ill. App. 3d 646, 655, 493 N.E.2d 135.) As such, the prosecutor's statement of the law with respect to defendant's involvement in the plot to break Edgar Hope out of prison was not incorrect. The prosecutor could legitimately argue that if the jury found that defendant had intended to promote or facilitate the escape of Edgar Hope, he was responsible for any act, including the murder of the two police officers, that was committed in furtherance of the intended crime. *People v. Terry*, 99 Ill. 2d 508, 460 N.E.2d 746; *People v. Taylor*, 199 Ill. App. 3d 933, 557 N.E.2d 917; see also *People v. Kessler* (1974), 57 Ill. 2d 493, 315 N.E.2d 29.

Furthermore, the prosecutor's remark concerning the sufficiency of defendant's mere presence was prefaced with the statement that defendant had a common design to break Edgar Hope out of police custody. As such, the prosecutor was not telling the jury that the defendant's mere presence at the scene of the crime with no other involvement was sufficient to establish his accountability. Rather, that statement, when read in context, asserted that defendant did not have to actively participate in the crime charged to be held accountable for that crime because he was a participant in a common design to break Edgar Hope out of police custody and that the murders were committed in furtherance of that design. See *People v. Taylor*, 199 Ill. App. 3d at 940-41; *People v. Miscichowski*, 143 Ill. App. 3d at 655-56.

### C. PRIOR CONSISTENT STATEMENTS

Defendant next contends that the following remark improperly bolstered Coleman's credibility.

"Is he believable. I submit to you that what he told you, the conversations I told you about are very, very believable. Mr. Clarkson has not changed his story about those conversations or anything else from day one. When he came forward, came forward with the information about the escape, he has been consistent. Had he changed that story one word, one little word, you can be sure that Mr. Kling is a very efficient defense attorney, would have jumped all over him. But there was not one word because he's telling the truth. He said, 'I will stand or fall on what I told you.'"

Defense counsel failed to object to this statement at trial and thus this issue has been waived. (*People v. Thomas* (1990), 137 Ill. 2d 500, 561 N.E.2d 57.) Even if not waived, we would determine that this comment was proper. The State may characterize its witnesses as honest and believable and comment upon the credibility of all witnesses. (*People v. Tannahill* (1987), 152 Ill. App. 3d 882, 504 N.E.2d 1283; *People v. Martinez* (1977), 45 Ill. App. 3d 939, 360 N.E.2d 495.) Moreover, to the extent that the prosecution was submitting the issue of Coleman's credibility to the jury and telling the jury what it believed the evidence would show, this statement is proper. See *People v. Tannahill*, 152 Ill. App. 3d at 887-88 (prosecutor's comment prefaced with "I submit" is not improper; prosecutor is "merely referring the comment to the jury for [its] consideration and decision"); see also *People v. Pauley* (1983), 117 Ill. App. 3d 486, 494, 453 N.E.2d 958 (statement that "[t]here is no reason to think that the [witness] would come in here and lie to you" was not improper).

Nor was it improper under the circumstances in this case for the prosecutor to represent that Coleman never changed his story. Although prior consistent statements are not admissible under the hearsay rule except to rebut a charge of recent fabrication (*People v. Collins* (1971), 49 Ill. 2d 179, 274 N.E.2d 77), the prosecutor's comments simply reiterated what was already admitted into evidence without objection. In fact, it was defense counsel who initially asked the witness whether he was consistent each time he spoke to the jail authorities and the assistant State's Attorneys. Coleman's statement that his story was consistent throughout was therefore properly before the jury and thus could be the subject of permissible comment and response. See *People v. Shum* (1987), 117 Ill. 2d 317, 340-41, 512 N.E.2d 1183; *People v. Stuckey*, 231 Ill. App. 3d at 563-64.

Similarly, the prosecutor's comment that defense counsel would have impeached Coleman if he had made any prior inconsistent statements has also been held to be within the realm of proper remarks for closing argument when made as a response to defense counsel's actions. On point is *People v. Thomas* (1984), 121 Ill. App. 3d 883, 460 N.E.2d 402. There, the prosecutor told the jury during closing argument:

> "We have what we call in this business impeachment of a prior inconsistent statement. And you better believe if she ever told anybody anything different you would have heard it because that would have been not only allowed but it is what they would have done. You know that she was consistent throughout in her description of the man that attacked her." (121 Ill. App. 3d at 893.)

The *Thomas* court stated that "this was a proper comment on the

consistency of [the witness'] description and the credibility of her testimony, and that it was invited by defense counsel's argument that she identified the wrong man." (121 Ill. App. 3d at 893.) We find that the reasoning of *Thomas* applies to the case before us and determine that the prosecutor's remark concerning defense counsel's failure to impeach Coleman was not improper.

Moreover, since the prosecutor's comments in closing argument were predicated upon testimony already introduced into evidence without objection, they could not rise to the level of prejudicial error, even if improper, because the jury was already aware of these prior statements which defense counsel raised and elicited. See *People v. Hooper* (1989), 133 Ill. 2d 469, 493, 552 N.E.2d 684 (supreme court held that the prosecutor's statement, although improper, did not result in "significant error or prejudice" since the jury was aware of the witness' earlier consistent statements).

### D. ATTACK ON DEFENSE COUNSEL

Defendant next argues that the prosecutor improperly attacked defense counsel when he said:

> "Witness after witness he wants you to believe is lying. Everybody is lying about Jackie, the little brother. Give me a break. That's stupid.
>
> * * *
>
> Without basis in fact, and unprofessional. What was the big deal about bringing Mayor Byrne here. Do you realize—think about it. Couldn't he have asked those same questions of any one of the 21 witnesses that we put on the witness stand. Was there a reward in existence. Was it made public. He chose not to ask those questions because he wanted to bring Mayor Byrne in here. It's a grand stand play. On top of that what does he do then. He turns around and starts attacking her, the ex-mayor.
>
> It doesn't matter if it's Mayor Byrne, Alfred Clarkson, Cook County Correctional Officer Williams. They're all the same to this nitpicker. He attacks them all."

Comments which "tend to arouse the antagonism of the jury and try the lawyers rather than the issue of guilt" are improper. (*People v. Horne* (1984), 129 Ill. App. 3d 1066, 1072, 473 N.E.2d 465.) Accordingly, it would be improper for a prosecutor to remark that defense counsel is using trickery, misrepresentations, perjury or fraud to free his client. *People v. Turner* (1989), 128 Ill. 2d 540, 539 N.E.2d 1196; *People v. Horne*, 129 Ill. App. 3d at 1072.

But the prosecutor's comments in which he adversely characterized defense counsel's trial strategies are not *per se* improper if the

characterization can be reasonably applied to the underlying conduct to which it relates. *People v. Cook*, 201 Ill. App. 3d at 461 (prosecutor's comment that defendant was "mudslinging" was proper response to defense counsel's closing argument); see also *People v. Wright* (1991), 218 Ill. App. 3d 764, 780-81, 578 N.E.2d 1090 (prosecutor's comments that witness had to withstand defense counsel's "insinuations" and "cheap shots" proper in light of defense counsel's cross-examination of that witness).

However, such characterizations of the evidence must not evolve into an unwarranted personal attack upon defendant's counsel. As such, the prosecutor's derogatory references to defense counsel as "unprofessional" and a "nitpicker" were improper. *People v. Lundell* (1989), 182 Ill. App. 3d 417, 538 N.E.2d 186; *People v. Suggs* (1977), 50 Ill. App. 3d 778, 365 N.E.2d 1118.

Even though improper, these remarks do not constitute reversible error. First, any prejudice which could have resulted from these comments was largely cured when the defense counsel's objection to this statement was sustained. (*People v. Seuffer* (1991), 144 Ill. 2d 482, 582 N.E.2d 71.) Furthermore, in context, the prosecutor's references to defense counsel as unprofessional and as a nitpicker fall considerably short of asserting that defense counsel engaged in any trickery or fabricated a defense. (*People v. Rodriguez* (1992), 236 Ill. App. 3d 432, 602 N.E.2d 1326 (comment that defendant's defense was "defense of confusion" was not reversible error; comments never accused attorney of any wrongdoing or lying); see also *People v. Turner*, 128 Ill. 2d at 560-61 (prosecutor's comment which accused defense counsel of exaggeration in his closing argument, even if improper, did not materially prejudice defendant).) We therefore cannot agree that the use of these invectives by the prosecutor would result in material prejudice to the defendant in view of the overwhelming evidence of defendant's guilt. *People v. Cook*, 201 Ill. App. 3d at 461.

## E. IMPROPER INFERENCE FROM THE EVIDENCE PRESENTED

Defendant next argues that the prosecutor advanced an argument which was not based on the evidence offered at trial. The prosecutor stated:

> "You heard a stipulation on the ballistics evidence that there were four bullets in Officer O'Brien. Tyrone Sims told you he saw Andrew Wilson fire once at Officer O'Brien and then jump on the car and fire two more times at the fallen officer. Three. You heard there were four bullets in Officer O'Brien. Three of the four positively matched Officer Fahey's gun. But the fourth bullet was mutilated. Too mutilated for comparison purposes. We don't know

scientifically which gun that bullet came out of. It could very well, for what we know now, have come from Officer O'Brien's own gun when he was over him."

As with the previous prosecutorial comments already discussed we note that, even if improper, this statement will not rise to the level of reversible error in view of the overwhelming evidence supporting defendant's conviction which we have summarized earlier. We would, however, also conclude that this remark was within the latitude granted prosecutors in closing argument to comment on the evidence presented at trial. (*People v. Shum* (1987), 117 Ill. 2d 317, 512 N.E.2d 1183.) A prosecutor may argue his theory of the case to the jury so long as it is based on the evidence presented at trial and legitimate inferences therefrom. *People v. Cisewski* (1987), 118 Ill. 2d 163, 514 N.E.2d 970; *People v. Britz* (1989), 185 Ill. App. 3d 191, 541 N.E.2d 505.

The question which arises is whether the inference which the prosecutor suggested regarding the source of the fourth bullet was a legitimate one. Upon a review of the evidence presented, we answer that question in the affirmative. Here, Tyrone Sims did testify that he saw Andrew Wilson fire a total of only three times at Officer O'Brien. The ballistics report entered by stipulation established that four bullets were recovered from O'Brien, one of which could not be identified. Musillami's testimony established that defendant was crouched over the body after O'Brien was lying there. Considering defendant's subsequent statements that he and his brother killed the two officers, coupled with Sims' testimony that Andrew fired only three shots at Officer O'Brien and that defendant was in a position where he could have fired the fourth shot, it was not too speculative to suggest to the jury that the fourth bullet may have been fired by the defendant. Therefore, the trial court did not err in overruling defendant's objection to this statement. *People v. Hoffstetter* (1990), 203 Ill. App. 3d 755, 560 N.E.2d 1349 (prosecutor's comment that defendant's roommate's gun was murder weapon was a fair inference where evidence showed that that type of weapon could have fired the fatal shot, that defendant had access to the gun, and the gun's first disappearance coincided with time of murder); see also *People v. Willis* (1991), 217 Ill. App. 3d 909, 577 N.E.2d 1215; *People v. Gant*, 202 Ill. App. 3d at 226.

### F. COMMENT ON DEFENDANT'S FAILURE TO TESTIFY

Defendant's last contention with respect to the prosecutor's closing argument is based on the following statement:

"I disagree with the defense lawyer that Tyrone Sims was his

witness. Tyrone Sims had been laying a finger on this guy. He's been identifying him for seven years. Ever since February 14th of 1982 when he identified him in a line-up and his brother, Tyrone Sims has been a thorn in his side because he's the only eyewitness to these murders.

DEFENSE COUNSEL: Objection, Judge. Jackie Wilson was there.

PROSECUTOR: He's the only eye witness to these murders that you heard from. And with him gone, how the case changes. Because then what we have that piece of paper the defense lawyer told you about. What do you think the defense would be then. There was such an intensive manhunt and police wanted these killers so bad. Whatever I said there they either beat out of me or \*\*\*. This case changes from one his obvious legal accountability to identification."

Defendant asserts that here the prosecutor improperly commented on his failure to testify and again personally attacked defense counsel. At trial, however, defense counsel objected to those remarks only on the basis that they were too speculative. Defendant did not object to them on the basis that they improperly commented on his right not to testify or attacked defense counsel. Consequently, these new contentions are waived for purposes of review. (*People v. Hampton* (1977), 46 Ill. App. 3d 455, 360 N.E.2d 1333.) However, even if these arguments were not waived, we would not find reversible error.

As a general principle, it is improper for the State to refer to a defendant's failure to testify, either directly or indirectly. To do so violates defendant's constitutional right to remain silent. (*People v. Arman* (1989), 131 Ill. 2d 115, 545 N.E.2d 658; *People v. Smith* (1984), 127 Ill. App. 3d 622, 469 N.E.2d 634.) The test is whether the prosecutor's comment "was intended or calculated to direct the attention of the jury to defendant's failure to testify." *People v. Benoit* (1992), 240 Ill. App. 3d 185, 189, 608 N.E.2d 250.

Under the foregoing test, however, we find that the prosecutor's comment that Tyrone Sims was the only eyewitness to the crime was entirely within the bounds of proper closing argument. (See *People v. Campbell* (1992), 232 Ill. App. 3d 597, 597 N.E.2d 820 (remark that an eyewitness was the only testifying witness to explain the crime was proper, even if the inference could be drawn that the defendant could have contradicted the witness' testimony if he had chosen to testify since that remark was not directed at defendant's failure to testify).) A statement which addresses the uncontradicted nature of the evidence is also not improper. (*People v. Skorusa* (1973), 55 Ill. 2d 577, 584, 304 N.E.2d 630 (statement that "[w]e have heard no evidence

here from the stand of what the reason, from his side, for [the theft] was," was determined not to have improperly called attention to defendant's failure to testify).) This is so even if the defendant is the only one who could refute the State's evidence. (*People v. Perry* (1989), 183 Ill. App. 3d 534, 540 N.E.2d 379; *People v. Pauley*, 117 Ill. App. 3d at 492.) Here, the prosecutor's statement merely commented on the fact that Sims, the only eyewitness to the murders, had consistently identified defendant. There is no error in such a comment. *People v. Campbell*, 232 Ill. App. 3d at 602-03.

Moreover, it was defense counsel who in his objection emphasized to the jury that defendant was at the crime scene and did not testify. The prosecution's statement in response, that Sims was the only witness that the jury had heard from, was therefore invited by defense counsel's statement. (See *People v. Lyles* (1985), 106 Ill. 2d 373, 478 N.E.2d 934; *People v. Smith*, 127 Ill. App. 3d at 632-33; *People v. Carruthers* (1974), 18 Ill. App. 3d 255, 267, 309 N.E.2d 659 ("defendant may not predicate error on a response by the prosecutor which he himself provoked").) Finally, even if the prosecutor's statement was improper, there was no greater prejudice flowing from his remark than that which may have resulted from defense counsel's own comment.

Nor do we think that the second portion of the prosecutor's remarks following defense counsel's objection was an improper attack on defense counsel. Viewed in context, those remarks can readily be perceived as a response to defense counsel's closing argument wherein he spoke of the "phenomenal pressure" by the State to obtain a conviction in this case, implying defendant's confession was coerced. In that same context, defense counsel also attacked the believability of Coleman's testimony that defendant was going to escape and kill Tyrone Sims. He contended that defendant would not have any motive to do so because Sims' testimony was beneficial to him insofar as it showed Andrew, and not defendant, to be the shooter. (See *People v. Lyles*, 106 Ill. 2d at 390-91 (prosecutor's statement that defense counsel would go to any length including misstating the law and confusing the jury in order to free defendant was not improper where such comment was invited by defense counsel's argument).) We further note that here too the prosecutor's remarks do not allege any trickery on the part of defense counsel (*People v. Lyles*, 106 Ill. 2d at 391), assail defense counsel's character (*People v. Kirk* (1966), 36 Ill. 2d 292, 222 N.E.2d 498), or suggest the fabrication of a defense. (*People v. Rodriguez* (1992), 236 Ill. App. 3d 432, 442-43, 602 N.E.2d 1326 (comment that defendant's defense was "defense of confusion" was not error; prosecutor never accused attorney of any wrongdoing or lying).

## IV. ACCOUNTABILITY INSTRUCTION

Defendant next argues that he was denied a fair trial because the trial court failed to give the jury a non-IPI instruction on the issue of accountability, and that even if the given instructions were proper, there was insufficient evidence to convict him under an accountability theory.

The jury was given IPI Criminal 2d No. 5.03, which provides:

> "A person is legally responsible for the conduct of another person when, either before or during the commission of an offense, and with the intent to promote or facilitate the commission of the offense, he knowingly solicits, aids, abets, agrees to aid, or attempts to aid the other person in the planning or commission of the offense."

The defendant's tendered instruction included this language, but then went on to state that, "Mere presence at the scene of a crime committed by another does not in and of itself make the defendant legally responsible for the conduct of that other person." Defendant argues that the trial court's refusal to give the second part, coupled with the State's aforementioned statement in closing argument that defendant would have been responsible even if he had fallen to the ground and covered his ears, is error.

Both the accused and the State are entitled to appropriate instructions which present their respective theories of the case if those theories are supported by the evidence presented at trial. (*People v. Stamps* (1982), 108 Ill. App. 3d 280, 438 N.E.2d 1282.) The decision whether to give a non-IPI instruction is within the sound discretion of the trial court. (*People v. Larson* (1980), 82 Ill. App. 3d 129, 402 N.E.2d 732.) Supreme Court Rule 451(a) provides that IPI instructions should be given unless they do not accurately state the law. 134 Ill. 2d R. 451; *People v. Thomas* (1991), 217 Ill. App. 3d 698, 577 N.E.2d 831.

■ As previously discussed with regard to the accuracy of the prosecutor's statement of the law of accountability, under the common design rule, defendant's agreement to participate in aiding the escape of Edgar Hope made him responsible for any act which was committed in furtherance of that crime. As such, defendant's proposed non-IPI instruction would by the thrust of its emphasis negate the common design theory properly urged by the State.

However, even if the common design rule were inapplicable, the trial court was still within its discretion in rejecting defendant's tendered instruction. Here, the jury was adequately instructed of the parties' respective theories of the case because the standard IPI accountability instruction contains the essence of the "mere

presence" instruction. (*People v. Dandridge* (1979), 79 Ill. App. 3d 693, 398 N.E.2d 955; see also *People v. Johnson* (1986), 150 Ill. App. 3d 1075, 502 N.E.2d 304; *People v. Craig* (1979), 79 Ill. App. 3d 584, 399 N.E.2d 168.) The second portion of defendant's proposed instruction is redundant as the defendant could not be found accountable for the murder of Officer O'Brien under the IPI accountability instruction if he was merely present at the scene. (*People v. Thomas* (1988), 175 Ill. App. 3d 521, 529 N.E.2d 1071.) The instruction unequivocally provides that the defendant must act knowingly, that he must intend the commission of the act and that he must solicit, aid, abet, agree to aid or attempt to aid in the commission or the planning of that offense. As the court stated in *People v. Thomas* (1988), 175 Ill. App. 3d 521, 529, 529 N.E.2d 1071, 1076:

> "The courts reasoned, generally, that the essence of the 'mere presence' instruction was already incorporated in or encompassed by those instructions—which advise the jury that a defendant must be found innocent unless the State proved beyond a reasonable doubt that before or during the commission of the defined offense he/she, with the intent to promote or facilitate the commission of that offense, knowingly solicited, aided, abetted, agreed or attempted to aid the other person in the planning or commission of it—and that the jurors were, therefore, fully and accurately apprised of the law constituting the theory of defense, *i.e.*, that mere presence at the scene of a crime during its commission is insufficient to sustain a conviction."

See also *People v. Thomas*, 217 Ill. App. 3d at 704; *cf. People v. Stamps*, 108 Ill. App. 3d at 299 (instruction that mere presence at the scene where narcotics are found is insufficient to establish possession, is not necessary where the possession instructions required that defendant knowingly exercise immediate control over narcotics).

## V. SUFFICIENCY OF THE EVIDENCE TO PROVE ACCOUNTABILITY

Defendant argues that even if proper instructions were given, there was insufficient evidence to find him accountable for the murder of Officer O'Brien. In so arguing, defendant again contends that his mere presence at the scene of the crime coupled with his flight therefrom are insufficient to establish his accountability. He claims that his statement that Officer O'Brien was still up and about could be given an innocent construction, reasonably interpreted as a frightened, unthinking response to his brother's telling him to get the gun. In response, the State argues that this court's decision in

defendant's earlier appeal, *People v. Wilson* (1985), 139 Ill. App. 3d 726, 487 N.E.2d 1015, forecloses consideration of this argument under the law of the case doctrine.

■ There is ample evidence present here to support defendant's conviction under an accountability theory. The evidence, including defendant's own confessions and the eyewitness testimony of Sims, Musillami and Hardin, showed that defendant and his brother planned to break Edgar Hope out of police custody and that they discussed obtaining extra guns to do so. They were on their way to break Hope out of prison when they were pulled over by the officers. At that time, defendant told his brother, "let's take him." After Andrew shot O'Brien the first time, defendant alerted his brother that Officer O'Brien was still up and about at which point Andrew shot O'Brien two more times. Defendant then proceeded to drive his brother away from the scene, smiling. Defendant thereafter admitted that he and his brother had killed the two officers in subsequent statements to correctional officers and fellow inmates. Based upon the evidence in its totality, the jury could well have found defendant accountable for the crimes charged.

We also agree with the State that the consideration of the sufficiency of the evidence is foreclosed in this instance by the law of the case doctrine. Under the law of the case doctrine:

> " '[A] determination of [a question] of law will generally be held to govern [the] case throughout all [of] its subsequent stages where such determination has already been made on a prior appeal to a court of last resort.' [Citation.] '[A]n appellate court's determination on a legal issue is binding on both the trial court on remand and appellate court on a subsequent appeal given the same case and substantially the same facts.' [Citation.]" *People v. Lyles* (1990), 208 Ill. App. 3d 370, 376, 567 N.E.2d 396.

*People v. McNair* (1985), 138 Ill. App. 3d 920, 486 N.E.2d 941.

Defendant raised the exact same sufficiency of the evidence argument in his first appeal. This court decided that the evidence presented at the first trial, defendant's own account of the incident as contained in his confession and his involvement in the plot to break Edgar Hope out of police custody, provided a sufficient basis upon which to find him accountable. (*People v. Wilson*, 139 Ill. App. 3d at 740-41.) We are cognizant that the prior appellate decision upholding the sufficiency of the evidence offered at defendant's first trial should not automatically foreclose attacks on the sufficiency of the evidence offered at a second trial unless the evidence presented in both trials was substantially the same. (See *Henderson v. State* (1985), 284 Ark. 493, 497, 684 S.W.2d 231, 233 ("logic and reasons for

holding the law of the case controlling would not seem to apply where competent evidence presented at a second trial was materially different from that presented at the first trial"); see also *Findley v. State* (1991), 307 Ark. 53, 818 S.W.2d 242.) However, when the evidence offered at the two trials is the same, or substantially the same, the law of the case doctrine will preclude review of defendant's argument. See *People v. Bricker* (1977), 48 Ill. App. 3d 452, 363 N.E.2d 190 (law of case doctrine precluded defendant's contention concerning witness' failure to recall defendant's tattoos; this contention was raised on prior appeal at which time appellate court held that that discrepancy did not interfere with a finding of guilt and that one witness' identification was sufficient to support defendant's conviction); *Henderson v. State*, 284 Ark. at 496, 684 S.W.2d at 233 (where appellate court in first appeal determined that evidence presented was sufficient to convict defendant, but reversed case on other grounds, law of the case doctrine precluded review of same sufficiency of the evidence issue on subsequent appeal after retrial where the evidence at the two trials was substantially the same); see also *Strasma v. Rager* (1988), 167 Ill. App. 3d 212, 521 N.E.2d 139.

There can be no dispute that the evidence presented at defendant's second trial was substantially the same as in the first. Defendant's challenge to the sufficiency of the evidence in his first trial was rejected in his first appeal. (*People v. Wilson*, 139 Ill. App. 3d at 740-41.) Consequently, the law of the case doctrine applies to preclude reconsideration of this issue.

In reaching this determination we recognize that the supreme court overturned the appellate court's first decision in this matter. That reversal, however, was predicated only upon the narrow issue appealed from by the State as to whether the rule established in *People v. Zehr* (1984), 103 Ill. 2d 472, 469 N.E.2d 1062, was to be given retrospective effect. In determining that the rule was to be given prospective application, the supreme court did not address any other issues decided by the appellate court in its first decision nor were any of these issues brought before it. The decision of the appellate court on defendant's initial appeal as to all other issues, including the question as to the sufficiency of the evidence, was unchallenged and it therefore should remain standing as the law of the case whereas and until those other issues are appealed to and decided by a higher court. Analogously, an opinion which is reversed, but not vacated, still retains its precedential value, although it may be somewhat diminished. *Durning v. Citibank* (9th Cir. 1991), 950 F.2d 1419; *Tierney v. Gilde* (1989), 235 N.J. Super. 61, 561 A.2d 638; *McCord v. State* (Ala. App. 1986), 501 So. 2d 520.

## VI. SUPPRESSION OF DEFENDANT'S CONFESSION

Defendant next contends that his confession should have been suppressed because it was involuntary and was obtained in violation of his fifth and sixth amendment right to counsel. Specifically, defendant argues that his confession was involuntary because he was beaten prior to his confession and was aware that his brother was also being beaten.

■ The hearing on the motion to suppress defendant's statement, which took place prior to defendant's first trial, is not contained in the record. Consequently, a determination on the correctness of the trial court's decision to admit defendant's confession would not be possible from the record before us and the issue is therefore waived. (*People v. Jackson* (1991), 145 Ill. 2d 43, 582 N.E.2d 125; see also *People v. Pecor* (1992), 153 Ill. 2d 109, 606 N.E.2d 1127.) Moreover, this court examined the admissibility of defendant's confession in his initial appeal and determined that it was properly admitted. (*People v. Wilson*, 139 Ill. App. 3d at 739-40.) We therefore decline to reconsider this issue under the law of the case doctrine. (See *People v. Thomas* (1981), 94 Ill. App. 3d 895, 419 N.E.2d 480 (appellate court could not consider voluntariness of defendant's confessions where that issue had been previously determined on prior appeal).) In so doing, we note that defendant has conceded the application of the law of the case doctrine and avers that he has only restated this argument to preserve this issue for appeal, presumably if leave to appeal were granted by the supreme court. See *People v. Triplett* (1985), 108 Ill. 2d 463, 485 N.E.2d 367.

Defendant next claims that his confession should not have been admitted because it was obtained in violation of his right to counsel. In support, defendant avers that he spoke with an attorney prior to his arrest when he knew that he was wanted by the police and that the police and prosecutors knew that he had spoken with an attorney prior to his giving of a transcribed statement. He contends that the mere knowledge by the State that he spoke to an attorney is sufficient to preclude any efforts by the State to talk to him outside of his attorney's presence. In his confession, defendant conceded that he did not talk to his lawyer about his involvement in the shootings. He asserts only that his attorney told him to stay off the streets because the police were picking up people in connection with the investigation of the shootings.

■ Defendant did not make this argument to the trial court below and thus has waived the issue for purposes of review. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) Defendant also failed to make this argument on his first appeal to this court and the "rule

has long been recognized that no point which was raised, or could have been raised in a prior appeal on the merits, can be urged on a subsequent appeal, and those not raised are considered waived." (*People ex rel. White v. Busenhart* (1963), 29 Ill. 2d 156, 159, 193 N.E.2d 850; *Kazubowski v. Kazubowski* (1970), 45 Ill. 2d 405, 259 N.E.2d 282.) As such, our determination in defendant's initial appeal that his confession was admissible will not be disturbed by defendant's attempt to challenge the confession's admissibility on a different ground during his second appeal, especially where the facts underlying defendant's claim were known to him at the time of his first appeal and nothing prevented him from making that argument at that time.

In addition, even if we addressed the merits of defendant's claim solely on the allegations as set forth in his brief, we would not find that the confession was obtained in violation of defendant's right to counsel. The threshold inquiry is whether defendant invoked his right to counsel. (*Smith v. Illinois* (1984), 469 U.S. 91, 83 L. Ed. 2d 488, 105 S. Ct. 490.) "[A]n assertion of the right to counsel need not be explicit, unequivocal, or made with unmistakable clarity." (*People v. Krueger* (1980), 82 Ill. 2d 305, 311, 412 N.E.2d 537.) However, not "every reference to an attorney, no matter how vague, indecisive or ambiguous, should constitute an invocation of the right to counsel." *People v. Krueger*, 82 Ill. 2d at 311.

In this instance, defendant does not allege that he told the police that he wished to speak with an attorney during his interrogation and as such there was no assertion by defendant of his fifth amendment right to counsel. (See *People v. Rivera* (1989), 187 Ill. App. 3d 813, 543 N.E.2d 840.) Defendant merely claims that he spoke with an attorney prior to being questioned and that the police were aware of this fact. The topic of defendant's attorney arose fortuitously in defendant's response to a question concerning his whereabouts between the killings and his arrest. There was no indication that defendant had sought counsel with respect to the shootings of the officers. (*Cf. McNeil v. Wisconsin* (1991), 501 U.S. 171, 115 L. Ed. 2d 158, 111 S. Ct. 2204 (accused's invocation of his sixth amendment right to counsel at bail hearing with respect to one crime does not constitute assertion of fifth amendment right to counsel as derived by *Miranda* with respect to a separate interrogation concerning a different crime).) Consequently, even if we accepted the facts as asserted by defendant in his brief, we would conclude that his fifth amendment right to counsel was not violated.

## VII. ARMED ROBBERY CONVICTION

Defendant next contends that his conviction for the armed robbery of Officer Fahey must be reversed. Specifically, defendant argues that his conviction was based on an accountability theory and that his acquittal for the murder of that same victim was an implicit acquittal for the armed robbery of Officer Fahey because Fahey's gun was taken prior to his death.

At its base, defendant's argument is that his conviction for the armed robbery of Officer Fahey was inconsistent with his acquittal for the murder of Officer Fahey. A verdict will only be set aside, however, if it is legally inconsistent (*People v. Carter* (1992), 228 Ill. App. 3d 526, 592 N.E.2d 491); logical inconsistency does not provide a sufficient basis upon which to set aside a verdict. (*People v. Cobbins* (1987), 162 Ill. App. 3d 1010, 516 N.E.2d 382.) A verdict is legally inconsistent where the essential elements of each crime must, by the very nature of the verdicts, have been found to exist and to not exist even though the offenses arise out of the same set of facts. (*People v. Frieberg* (1992), 147 Ill. 2d 326, 589 N.E.2d 508; *People v. Frias* (1983), 99 Ill. 2d 193, 457 N.E.2d 1233.) A verdict of acquittal on one charge is generally not legally inconsistent with a conviction on a separate charge, even though both charges arise out of the same occurrence. *People v. Fiore* (1988), 169 Ill. App. 3d 601, 523 N.E.2d 996.

■ These two verdicts are not necessarily logically inconsistent. Although unlikely, the jury could have inferred that defendant was participating in a plan to rob the officers of their guns, but withdrew prior to the shooting of Officer Fahey only to rejoin the plot with his warning to his brother that Officer O'Brien was still up and around.

However, even if logically inconsistent, the verdict of acquittal for the murder of Officer Fahey and the conviction for the armed robbery are clearly not legally inconsistent. These two offenses are entirely separate, each consisting of different elements. (See *People v. Spiezio* (1989), 191 Ill. App. 3d 1067, 548 N.E.2d 561 (defendant's conviction for attempted murder of one police officer was not inconsistent with his conviction for aggravated assault on another officer where the evidence could be interpreted that defendant intended to kill the first officer and second officer was in reasonable apprehension of suffering a battery); see also *People v. Thurman* (1988), 169 Ill. App. 3d 996, 523 N.E.2d 1184.) Armed robbery involves the taking of property from a person by use of force or by threatening the imminent use of force while armed with a dangerous weapon. (Ill. Rev. Stat. 1983, ch. 38, par. 18—1.) In contrast, "[a] person who kills an individual *** commits murder if, in performing the acts which cause the death: (1) [h]e either intends to kill or do great bodily harm to that individual or another ***; or (2) [h]e knows that such acts

create a strong probability of death or great bodily harm to that individual or another." (Ill. Rev. Stat. 1983, ch. 38, par. 9—1.) These verdicts cannot be considered legally inconsistent because the jury's resolution of either charge does not preclude an opposite resolution on the other charge. Accord *People v. Barnard* (1984), 104 Ill. 2d 218, 470 N.E.2d 1005 (verdicts of guilty of murder but not guilty of armed violence were not legally inconsistent as the acquittal on the armed violence charge was not a finding that the defendant did not commit murder); *People v. Bond* (1992), 230 Ill. App. 3d 1086, 598 N.E.2d 979 (convictions for murder and attempted armed robbery were not legally inconsistent with finding of not guilty of armed violence as the acquittal for armed violence was not a finding that defendant did not commit murder).

We also note that courts have long recognized in upholding logically inconsistent verdicts that a jury may acquit defendant of one count of a multicount indictment with the belief that the count on which defendant was convicted would provide sufficient punishment. (*People v. McClellan* (1992), 232 Ill. App. 3d 990, 600 N.E.2d 407; *People v. Sevier* (1992), 230 Ill. App. 3d 1071, 598 N.E.2d 968 (jury's acquittal on armed violence charge could be construed as an act of leniency and was not legally inconsistent with defendant's conviction for murder and attempted armed robbery); *People v. Sandy* (1989), 188 Ill. App. 3d 833, 544 N.E.2d 1248; see also *Kennedy v. Washington* (7th Cir. 1993), 986 F.2d 1129 (inconsistent jury verdicts convicting on one count and acquitting on another does not require that defendant be acquitted of both counts as the jury's verdict should be allowed to stand on the theory that the jury found facts sufficient to convict on the first ground, but acquitted on the second ground on the basis of leniency).

## VIII. SENTENCING

Defendant next argues on appeal that the trial court erred in imposing a sentence of natural life imprisonment for the murder of Officer O'Brien. Defendant argues that this sentence is excessive in light of his passive role in the crime. In arguing that his sentence is excessive, defendant points to the fact that Andrew, who shot both officers, also received a sentence of natural life imprisonment.

A reviewing court will disturb a defendant's sentence on appeal only where the trial court's imposition of such a sentence constitutes an abuse of discretion. (*People v. Steffens* (1985), 131 Ill. App. 3d 141, 475 N.E.2d 606.) The trial court is in the best position to balance the appropriate factors and tailor a sentence to the needs of the case. (*People v. Staten* (1986), 143 Ill. App. 3d 1039, 493 N.E.2d 1157.) These

factors include the circumstances surrounding the crime itself and defendant's age, general moral character and criminal history. (*People v. Luna* (1992), 234 Ill. App. 3d 544, 600 N.E.2d 1212.) In addition to defendant's potential for reform, the trial court may also consider the recognized interest in protecting the public and in providing a deterrent. *People v. Cosme* (1993), 247 Ill. App. 3d 420, 617 N.E.2d 364.

■ In this case, the trial court did not abuse its discretion in imposing a sentence of natural life imprisonment. The need to impose a severe punishment for the murder of a police officer as a deterrent to protect the public has been well recognized. See *People v. Staten*, 143 Ill. App. 3d at 1060 (imposition of natural life for murder of a police officer was not an abuse of discretion in light of seriousness of crime and poor rehabilitative potential of defendant); see also *People v. Carr* (1989), 188 Ill. App. 3d 458, 544 N.E.2d 978 (sentence of natural life for murder of police officer upheld on appeal).

In addition to the seriousness of this offense, defendant had an extensive criminal history which the trial court noted in passing sentence, referring to him as a "career criminal." (See *People v. Morando* (1988), 169 Ill. App. 3d 716, 726, 523 N.E.2d 1061 (sentence of natural life imprisonment for murder was not an abuse of discretion in light of "defendant's two prior juvenile delinquency findings on burglary and automobile theft charges and one prior adult burglary conviction, his attitude and character, the lack of hardship on others that his imprisonment would cause, the safety of the public, his lack of remorse, the cold-blooded nature of his crimes, the lack of other mitigating factors, and his poor rehabilitative possibilities in light of the fact that since age 15 he had not been out of trouble for any length of time at all").) There was ample evidence introduced at trial and at the sentencing hearing as to defendant's poor rehabilitative potential, such as his threat to Officer Crosby that "You should have killed me when you had the chance, because I already killed two Chicago police officers and I am not afraid of hurting anyone else." See *People v. Morando*, 169 Ill. App. 3d at 727 (rehabilitative potential of defendant was considered poor where defendant had been in a "bucket of trouble" since age 15); see also *People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344 (sentence of natural life upheld where defendant demonstrated lack of remorse and callous attitude after the crime).

The trial court also specifically rejected defendant's claim that his participation in the offense was passive, stating:

> "This defendant did not pull the trigger, but in every other way he assisted, aided and abetted even to the extent of calling to the shooter's attention the fact that Officer O'Brien was still moving

up and about, an act which resulted in the shooter, Andrew, firing two more times at Officer O'Brien. These additional shots could very well have caused O'Brien's death."

The trial court went on to find that defendant's intent and action were clearly explained by his subsequent actions, including the "cold, calculated action of the defendant in driving off from the scene of the murders smiling." (See *People v. Hines* (1988), 165 Ill. App. 3d 289, 303-04, 518 N.E.2d 1362 (sentence of natural life was not an abuse of discretion even though defendant was found guilty under an accountability theory and there was some evidence that he may not have known that his cohort had fatally stabbed the victim where facts strongly suggested that defendant knew what occurred after he left the scene and that he knowingly left a severely injured victim dying in an isolated area).) We therefore conclude that the evidence in the record, including defendant's criminal record, his participation in the offense, and his poor prospects for rehabilitation, in addition to the recognized need to protect society, provide a sufficient basis for the trial court's sentence and, as such, find no abuse of discretion on its part.

We also reject defendant's contention that he should have received a lesser sentence because his brother, who also received a life sentence, was the actual shooter. Although fundamental fairness does require that similarly situated defendants should not receive grossly disparate sentences (*People v. Coleman* (1990), 201 Ill. App. 3d 803, 559 N.E.2d 243), a defendant cannot generally complain that his sentence was excessive when compared with the sentence of his codefendant when the sentences were equal and within the statutory limits of the offense. See *People v. Fauntleroy* (1991), 224 Ill. App. 3d 140, 586 N.E.2d 292 (appellate court rejected claim that defendant's sentence for murder should be reduced because he received the same sentence as the person who actually shot the victim where defendant did nothing to stop execution style murder, failed to show remorse for death of the victim, and actually chose the victim as a target for robbery).

Here, defendant's claim is that his sentence should be lower because his participation in the crime was not as great as his brother's. That argument, if anything, would militate a harsher sentence for the shooter rather than a more lenient one for his accomplice. That Andrew was actually the shooter does not negate defendant's own meaningful participation in the murders, including his agreement to accompany his brother on a common criminal enterprise, his "let's take him" comment when pulled over by the officers, the fact that he alerted his brother that Officer O'Brien was

still up and about, and the fact that he drove away from the scene smiling with the officer's gun, never reporting the crimes or showing any remorse. In view of these factors, we cannot say that the trial court abused its discretion in imposing a natural life sentence on defendant even though his brother was the shooter. *People v. Fauntleroy*, 224 Ill. App. 3d 140, 586 N.E.2d 292; see also *People v. Williams* (1992), 228 Ill. App. 3d 981, 593 N.E.2d 968.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Judgment affirmed.

MURRAY and McNULTY, JJ., concur.